Michael CLIFFORD et al., Plaintiffs,

v.

Timothy MORITZ et al., Defendants.

No. C 2 79 414.

United States District Court,
S. D. Ohio, E. D.

June 19, 1979.

Jay F. McKirahan, Circleville, Ohio, for plaintiffs.

William C. Moul, Columbus, Ohio, for defendant Ohio Dept. of Mental Health and Mental Retardation.

Robert W. Sauter, Columbus, Ohio, for defendant OCSEA.

Herschel M. Sigall, Columbus, Ohio, for defendant CWA.

Ronald H. Janetzke, Columbus, Ohio, for defendant AFSCME.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the motion of the plaintiffs for a preliminary injunction and on the motion of the defendants to stay the proceedings. Specifically, the plaintiffs allege that certain policies adopted by the defendant Ohio Department

of Mental Health and Mental Retardation [hereinafter MH–MR] and the allegedly discriminatory application of those policies constitute an abridgement of the plaintiffs' rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. This action was therefore brought under the provisions of 42 U.S.C. § 1983. An evidentiary hearing was held on May 31, 1979. Based upon that hearing, the memoranda of counsel and the other materials before it, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52, F.R.C.P.

### Findings of Fact

The plaintiff Ohio Public Workers United [hereinafter OPWU] is a nascent labor organization founded in July of 1978 by the plaintiff Michael Clifford. OPWU represents public employees in Ohio, including employees of MH–MR.

The defendant MH–MR is a state agency charged with the maintenance, operation, management and governance of all state institutions for the care, treatment and training of persons who are mentally ill, mentally retarded, psychopathic and epileptic. MH–MR is the largest employer in the state government, employing approximately 18,000 persons, of which approximately 17,000 are involved with patient care at thirty-three hospitals throughout the state.

Three unions which presently represent MH–MR employees are signatories to "master" collective bargaining agreements with MH–MR. All three of these defendant unions, Ohio Civil Service Employees Association [OCSEA], American Federation of State, County, and Municipal Employees [AFSCME] and Ohio State Government Employees/Communications Workers of America [CWA] represent ten percent or more of the employees of MH–MR.

The three "policies" in question in this action have been labelled by the parties the "ten percent rule," the "fifteen percent rule" and the "thirty percent rule." The ten percent rule refers to the solicitation policy with regard to non-employee union organizers which was established in early 1978 by means of a memorandum issued by the defendant director of MH–MR, Timothy Moritz. It provides that non-employee union organizers may have access to hospital grounds for the purpose of union solicitation in non-work areas only if those organizers represent a union which already has as members at least ten percent of MH–MR employees statewide. OPWU has far less than ten percent membership among MH–MR employees, and, as a result, the plaintiff Clifford has been denied access upon request to the grounds of MH–MR hospitals to engage in union solicitation.

The fifteen percent rule is in actuality simply a provision of the master collective bargaining agreement between MH–MR and the defendant unions. It provides that the master agreement will become effective and remain effective only at those hospitals at which the union in question represents at least fifteen percent of the employees. OPWU is not a signatory to the master agreement, nor does it represent fifteen percent of the employees at any given MH–MR facility.

The thirty percent rule is a requirement that only a union representing at least thirty percent of a state department's employees could enter a collective bargaining agreement with that department. This requirement was recommended to all state departments by the Ohio Department of Administrative Services. It was simply a recommendation, however, and all parties are agreed that MH–MR entered into master agreements with the defendants OCSEA and CWA when they represented less than thirty percent of the department employees. The plaintiff Clifford testified that the thirty percent rule was cited in a letter from the defendant Moritz as a reason for refusing to bargain with OPWU. The plaintiffs were unable to produce that letter at the hearing however. The defendants maintain that MH–MR has never adopted nor acted in accordance with the thirty percent policy.

The plaintiff Michael Clifford has had a great deal of experience with the labor

relations area, especially with respect to MH–MR. He has, in fact, worked at one time for all three of the defendant unions and has often solicited members for those unions on MH–MR hospital grounds. He founded OPWU because of his perception that a new organization could better serve Ohio public employees. In garnering the few members within MH–MR that OPWU presently has, he acknowledged that OPWU has made use of telephone contacts, home visits, off-site meetings, mail solicitation and newspaper advertisements in order to solicit members. He also testified that such alternatives were and are a sad substitute for the face-to-face work site solicitation available to those who satisfy the ten percent rule.

Prior to the filing of the complaint in this action, the plaintiffs Michael Clifford and OPWU filed a complaint in the Court of Common Pleas, Franklin County, Ohio, on March 7, 1979, alleging that the policies in question here were violative of the Ohio Constitution and unauthorized by any Ohio law.

The parties informed the Court that the state court had scheduled a hearing on the plaintiffs' motion for a preliminary injunction on June 1, 1979, the day after the hearing held in this court. To date no action has been taken by the state court in this matter.

### Discussion

### I. Abstention

The Court will first address the motion to stay this action in accordance with the familiar *Pullman* abstention doctrine. *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The notion that a federal court, clearly granted jurisdiction over a particular case by the Congress of the United States, should decline to exercise that jurisdiction due to usually unarticulated principles of "comity," while appropriate in some circumstances, is fundamentally counterintuitive. The Supreme Court of the United States has recognized that abstention by a federal district court in these circumstances is permissible

"only in narrowly limited 'special circumstances' . . . justifying 'the delay and expense to which application of the abstention doctrine inevitably gives rise.'" *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 1757, 32 L.Ed.2d 257 (1972) (quoting *England v. Medical Examiners*, 375 U.S. 411, 418, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964)); *see Bellotti v. Baird*, 428 U.S. 132, 150, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).

A review of the *Pullman* case and its progeny demonstrates what those "limited special circumstances" are. The paradigm case for *Pullman* abstention is one in which an *unconstrued* state statute is assailed by a plaintiff whose allegation that the statute, either facially or as applied, is unconstitutional raises a difficult and sensitive constitutional question. *E. g., Railroad Commission v. Pullman Co., supra; Lake Carriers' Association v. MacMullan, supra.* Often the defendant state officials argue for a narrow construction of the state statute which would remove the constitutional objection. *E. g., Bellotti v. Baird, supra.* In such cases there is ambiguity in the state statute which must be resolved before the constitutional claim can even be addressed. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). Where the federal court may potentially strike down a state statutory scheme with far reaching effects before a state court has had the opportunity to construe the statute, *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), deference to the state court system is essential to preserve undue judicial alteration of the fundamental federal structure of the Constitution.

Given these principles, the argument for abstention in the case at bar is weak indeed. Rather than a wide ranging state statutory scheme, this case simply involves the action of a state agency taken toward these plaintiffs pursuant to a written "ten percent" rule about which there is absolutely no ambiguity nor disagreement as to its meaning. There is no ambiguity to be resolved in the state court which could in any way "change" the constitutional question

presented here. Simply stated, the only way for the need to decide the constitutional claim in this case to be "obviated" is if the plaintiff wins in state court and the question therefore becomes moot. But that factor is present in every case involving concurrent jurisdiction in state and federal courts, and it is simply insufficient to override the express Congressional grant of jurisdiction in this case.

Furthermore, as shall be seen below, the constitutional question presented is neither novel nor especially difficult. Hence this case is similar to *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), in which the Supreme Court held abstention to be improper where the constitutional claim was clearly drawn and "uncomplicated by an unresolved state law." *Id.* at 439, 91 S.Ct. at 511. As the Court stated in that case, "abstention should not be ordered merely to await an attempt to vindicate the claim in a state court." *Id.*

■ Despite this precedent, this Court has nonetheless deferred temporarily to the state court. The state court has failed to act upon the plaintiffs' request for temporary relief for over three months, despite the allegations of irreparable harm through the loss of OPWU membership and the abridgement of first amendment rights. This Court is of the opinion that, due to the delay which limits the Court's ability to abstain, this Court's failure to act on the motion for a preliminary injunction is no longer justified. *Bellotti v. Baird, supra,* 428 U.S. at 150, 96 S.Ct. 2857.

## II. The Motion For Preliminary Injunction

■ At the heart of this case is the MH–MR policy which denies the plaintiff Clifford and other non-employee OPWU organizers access to hospital grounds to solicit union membership because OPWU does not represent at least ten percent of MH–MR's employees. This rule, on its face, appears to allow some persons the use of public property for the exercise of first amendment rights, while denying use of that property to other similarly situated persons. In determining whether a preliminary injunction should issue to enjoin enforcement of this rule with respect to the plaintiffs, the Court must decide four issues in the plaintiffs' favor:

(a) Whether the [plaintiff has] shown a strong or substantial likelihood of success on the merits.

(b) Whether the [plaintiff has] shown irreparable injury.

(c) Whether the issuance of a preliminary injunction would cause substantial harm to others.

(d) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (CA 6, 1977).

■ It cannot be questioned that speech concerning the merits of a particular union and the invitation to associate with others in a labor organization to promote common goals is speech protected by the First Amendment. *Thomas v. Collins,* 323 U.S. 516, 537–38, 65 S.Ct. 315, 89 L.Ed. 430 (1945). The fact that such expression is protected, however, does not mean that it may be exercised whenever and wherever the speaker may please. Reasonable time, place and manner regulations of the exercise of free expression, applied evenhandedly, do not violate the first amendment's guaranty. *Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Thus, in *Adderly v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), Mr. Justice Black's opinion for the Supreme Court upheld the right of a state to proscribe the use of its jail grounds for political demonstrations of any kind, concluding that the "United States Constitution does not forbid a State to control the use of its own property for its own lawful *nondiscriminatory* purpose." *Id.* at 47–48, 87 S.Ct. at 247 [emphasis added].

Unlike the sheriff in *Adderly,* the defendants in this case have not sought wholly to prevent the use of MH–MR hospital grounds for the exercise of protected expression by non-employees. Rather, they have adopted a rule allowing some non-em-

ployees to engage in that activity, while prohibiting other non-employees from doing so. The decisions of the Supreme Court of the United States, as will be seen, require a substantial if not compelling justification for such a selective exclusion from a public place.

In *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), the Supreme Court struck down an attempt by the City of Chicago to permit the use of school grounds for free expression (picketing) only if that expression involved a labor dispute. The Court found that the Chicago ordinance regulated the place in which first amendment rights could be exercised on the basis of content:

> Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. . . . Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusion from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Id.* at 96, 92 S.Ct. at 2290. A year ago, when the plaintiff Michael Clifford worked for AFSCME, he was permitted to enter hospital grounds under the ten percent rule to urge employees to join AFSCME. Now he has been denied permission to enter the grounds because he wishes to urge employees to join OPWU, a union without ten percent MH–MR employee membership. The plaintiff is obviously the same person; he has been excluded from a public place available to others because his message has changed.

■ In reaching the conclusion that the defendant's ten percent policy constitutes, on its face, a selective exclusion from a public place on the basis of speech content, the Court notes that the ten percent rule itself does not involve the exclusive recogni-

tion of a single bargaining agent or the simple performance of contractual duties pursuant to a collective bargaining agreement by a public agency. Thus the two cases principally relied upon by the defendants, *Memphis American Federation of Teachers, Local 2032 v. The Board of Education of Memphis City Schools*, 534 F.2d 699 (CA 6, 1976) and *Connecticut State Federation of Teachers v. Board of Education*, 538 F.2d 471 (CA 2, 1976), are not apposite to the case at bar. Neither case specifically addressed, nor apparently involved, the question of the ability of a school to grant access to public property to non-employee members of a majority union while denying such access to a minority union's non-employees. This Court agrees with the Sixth Circuit Court of Appeals that the general grant of privileges in a collective bargaining agreement to teachers belonging to the signatory union which are not available to teachers belonging to another union in no way implicates the first amendment rights of the other union itself or any non-teacher member of that other union. *Memphis American Federation of Teachers, supra*, 534 F.2d at 702. As to the rights of the teachers who were members of the minority union, Judge Weick's opinion noted that "[t]he content of the First Amendment rights of teachers in the school setting is not in question in this appeal." *Id.* at 703.

■ Because the Court has found that the ten percent rule abridges free expression on the basis of content, it may be said to be presumptively unconstitutional, *see* Karst, *Equality as a Central Principle in the First Amendment*, 43 U.Chi.L.Rev. 20, 28 (1975), unless it survives the rigorous constitutional scrutiny to which such regulations are subject. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 217, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Police Dept. of Chicago v. Mosley, supra*, 408 U.S. at 98–99, 92 S.Ct. 2286. Thus, in *Mosley*, the Court struck down the content-based Chicago ordinance because it "impose[d] a selective restriction on expressive conduct far 'greater than is essential to the furtherance of [a substantial governmental] interest.'" *Id.* at 102,

92 S.Ct. at 2293, 2294 (bracket in original). The decisions analyzing selective exclusions from public places in *Mosley* and *Erznoznik v. Jacksonville* demonstrate that such exclusions can only be justified if they further substantially important governmental interests in a manner narrowly tailored to accomplish that result with the least amount of intrusion upon first amendment freedoms.[1]

In the case at bar, MH–MR has cited the need to prevent disruption at its facilities, claiming an adverse impact upon its mental health patients. Such an interest is certainly important. However, there is no evidence before this Court that on-site solicitation by representatives of OPWU is disruptive at all; there is no evidence, nor undoubtedly could there be, that solicitation by representatives from unions with less than ten percent MH–MR membership is inherently more disruptive than such solicitation by unions with more than ten percent representation. *See Mosley, supra,* 408 U.S. at 100, 92 S.Ct. 2286. The simple conclusion that less unions means less disruption and that the line can be drawn at ten percent membership paints with far too broad a brush to protect the vital guaranty of the First Amendment. If MH–MR was genuinely concerned with the allegedly adverse effect of union solicitation on patients, it could simply limit the total number of non-employees permitted on hospital grounds at any given time or it could bar non-employee solicitation altogether. Such regulations would not bar admittance to non-employees on the basis of what they intend to say. The defendants further assert that the ten percent rule protects patients by limiting labor strife caused by interunion competition. This contention is simply not credible in light of the fact that the defendants recognize that the rule would theoretically allow up to ten unions on the property at one time, and in light of the fact that MH–MR promotes interunion competition by recognizing and signing master agreements simultaneously with more than one union.

■ The Court is convinced that MH–MR officials simply wish to limit the number of unions with which they have to deal. Such an interest is at least rational on the basis of the administrative convenience involved. That interest is nonetheless insufficient to justify the abridgement of the first amendment rights of these plaintiffs solely on the basis of the content of their speech.[2] The

1. The exceptions to the rule of content neutrality have been correspondingly narrow and justified only by very substantial interests. *E. g., Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (interest of military in maintaining historical neutrality in political matters); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (need to shield captive audience from intrusion of unavoidable political advertising); *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (need to protect juveniles from exposure to pornographic materials which fall short of being obscene as to adults); *but cf. Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310; *petition for rehearing denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976) (suggestion by plurality that content regulations of non-obscene pornographic material requires less justification than content regulations of other protected forms of speech).

2. The defendants have argued that this abridgement of the plaintiffs' rights is justified by the existence of alternative means by which OPWU can contact MH–MR employees, such as telephone contacts and newspapers. Such alternatives are available, of course, to the other unions which are granted access to MH–MR hospitals. The short answer to this argument is that "[o]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975); *accord, N.L.R.B. v. Fruit Packers Local 760,* 377 U.S. 58, 80, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964) (Black, J., concurring). Even if "alternative channels" were relevant here, as in the area of commercial speech, the Court is of the opinion that the alternatives are far less effective than on-site solicitation and are therefore "far from satisfactory." *Linmark Associates v. Township of Willingboro,* 431 U.S. 85, 93, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977).

Finally, the Court rejects the notion that labor disputes should be treated as labor cases and not as constitutional cases even though they transpire in the public sector for two reasons. First the Fourteenth Amendment holds a public body to a higher standard than a private employer when it deprives a person of a protected interest in liberty or property. A

Court concludes that the plaintiffs have shown a substantial probability of success on the merits with respect to the ten percent rule.

As to the thirty and fifteen percent rule, the Court is of the opinion that the plaintiffs have shown no probability of success on the merits. The First Amendment protects the right to deliver a message, not the right to have that message accepted and acted upon by the listener. In this context, the First Amendment protects the right to belong to a union and to discuss or propose membership with another, but there is no first amendment right to have an employer agree to bargain collectively or to sign a contract. *E. g., North Carolina Association of Educators v. Phillips*, 381 F.Supp. 644, 646 (M.D.N.C.1974). On the basis of the Equal Protection Clause, the MH–MR policy, even if it was thirty percent, does not classify on the basis of suspect criteria or fundamental personal rights, and it is rationally related to a legitimate state interest. *Memphis American Federation of Teachers, supra.* No injunction shall issue with regard to the fifteen and thirty percent rules, and the remainder of this opinion shall deal only with the ten percent rule.

The Court further concludes that the plaintiffs have shown irreparable injury. It is, of course, difficult if not impossible to measure in dollars the true impact upon a labor union of such injuries as lost membership. More importantly, the Supreme Court has expressly held that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

In addition, the Court can perceive of no substantial harm to others as a result of the issuance of a preliminary injunction with regard to the ten percent policy. The officials of MH–MR have clearly determined that union solicitation is not so disruptive as to be prohibited entirely, and, for the reasons stated above, the addition of the plaintiff Clifford to those already present will present no appreciable additional burden which cannot be cured by other content neutral measures.

Finally, the Court concludes that issuance of a preliminary injunction will serve the interests of the public. Any decision upholding an individual's right not to be excluded from a public place solely on the basis of the message to be uttered furthers the public interest in maintaining a society sensitive to the need for freedom of expression unfettered by any governmental determination that certain expression is unimportant, insubstantial or otherwise unacceptable. The members of the public who are employees of MH–MR are further benefitted by the availability of greater information upon which to base the important decisions inherent in union membership. Accordingly, the public interest is served in preventing content based regulations which either fail to promote substantially important governmental interests or promote such an interest in a manner for more intrusive on fundamental individual rights than is necessary.

### Conclusions of Law

This Court has jurisdiction to hear this action under the provisions of 28 U.S.C. § 1343.

The plaintiffs have demonstrated a strong or substantial likelihood or probability of success of their claim that the defendants' enforcement of the ten percent rule with regard to access to the defendant department's hospital grounds for the purpose of union solicitation deprives the plaintiffs of their rights under the First Amendment, as applied to the states by the Due Process

---

government is not, therefore, as free to act arbitrarily as a private employer. Second, the Supreme Court has consistently refused to allow exceptions to the general rule of content neutrality simply because of the problems created by the presence of the First Amendment in the area of public sector labor relations. *Police Dept. of Chicago v. Mosley, supra*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212; *see Hudgens v. NLRB*, 424 U.S. 507, 520, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976).

Clause of the Fourteenth Amendment, and the Equal Protection Clause.

The plaintiffs have shown irreparable injury in their demonstrated loss of first amendment rights.

Granting the preliminary injunction will not cause substantial harm to others, and it will cause less harm than would be caused by a failure to grant preliminary relief.

Granting the preliminary injunction will serve the public interest.

WHEREUPON, the Court determines that the motion to stay the action is without merit and it is therefore DENIED. The Court further determines that the plaintiffs' motion for a preliminary injunction is meritorious and it is therefore GRANTED.

IT IS HEREBY ORDERED THAT the defendants Timothy Moritz, William Davis, Vaughn Davis, Richard Jackson, Ohio Department of Mental Health and Mental Retardation are ENJOINED from enforcing against the plaintiffs or any authorized representative of OPWU the rule requiring ten percent MH–MR membership before allowing them access to hospital grounds for the purpose of union solicitation. The same defendants are further ENJOINED from denying to non-employee members of OPWU access to hospital grounds for the purpose of solicitation in any manner or pursuant to any rule which is not equally applicable to non-employee members of all other unions.

The Court determines that no security is required in this action.

This order shall continue in effect until final disposition of this action or until further order of the Court.

IT IS SO ORDERED.