ALBERT PERSINGER, *dba*

*Albert's Welding Service*

*v.*

EDWIN ASSOCIATES, INC.

(No. 13587)

Decided December 7, 1976.

*Robert M. Harvey* for appellant.

*Charles E. Hurt* for appellee.

FLOWERS, JUSTICE:

The subject matter of this appeal from a judgment of the Circuit Court of Kanawha County involves the constitutionality of the attachment-garnishment procedures embodied in Article 7, Chapter 38 of the *West Virginia Code*. The sole issue to be determined is whether these statutory procedures comply with federal and state due process guarantees.

The issue arose from a civil action instituted by Albert Persinger, doing business as Albert's Welding Service, against Edwin Associates, Inc., a corporation, to recover $20,776 for equipment and labor furnished the defendant corporation. Following the defendant's general denial, the plaintiff sought and obtained an order of attachment and writ of garnishment from the Circuit Clerk of Kanawha County. Upon a motion to quash the attachment, the circuit court held the provisions of Article 7, Chapter 38 of the *West Virginia Code* violative of the due process clauses of the state and federal constitutions for lack of preseizure notice and hearing.

In compliance with the provisions of *W. Va. Code*, 38-7-1, the plaintiff filed an affidavit with the circuit clerk, alleging the nature and amount of his claim against the defendant as well as the grounds upon which he sought

the attachment. By the affidavit the plaintiff stated in conclusory language that the defendant was removing or about to remove its property from the state to avoid process or execution on a judgment and was converting or about to convert its property into money and securities with intent to defraud creditors.

The defendant moved to quash the attachment upon the grounds that: (1) the affidavit was insufficient; (2) false assertions were contained in the affidavit; (3) false grounds were alleged in the affidavit; and (4) the attachment-garnishment procedures were unconstitutional. The affidavit was subsequently amended to reflect factual assertions relative to the defendant's status and conduct which included an averment that the defendant was taking funds from the state for use in a different recreational project in South Carolina.

The circuit court, relying upon our decision in *State ex rel. Payne v. Walden*, 156 W. Va. 60, 190 S.E.2d 770 (1972), and without ruling on the sufficiency of the original or amended affidavit, held the statutory attachment procedures violative of due process guarantees of the state and federal constitutions.

The determination of the issue presented by this appeal rests almost solely upon the effect of *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, (1969), and its progeny. The impact of these decisions on prejudgment remedies, however, is not altogether clear. The confusion, resulting from conflicting opinions and complicated by changes in the composition of the Court, is evident upon careful assessment of these cases and has rendered the constitutional validity of attachment-garnishment statutes uncertain.

In *Sniadach v. Family Finance Corp., supra,* the Court struck down a state garnishment statute because of insufficient notice and preseizure hearing procedures. Garnishment without preseizure notice and opportunity to be heard was deemed violative of due process. *Sniadach*

was followed by *Fuentes v. Shevin*, 407 U.S. 67, 1983 (1972), a four to three decision rendered while two vacancies existed on the Court.

*Fuentes* echoed the preseizure hearing requirements of *Sniadach*. The four-judge majority struck down the Florida replevin statute for its lack of compliance with the *Sniadach* requirements. The Court suggested, however, that prejudgment remedies could survive the impact of *Sniadach-Fuentes* so long as the creditor established the validity, or at least probable validity, of his underlying claim through a hearing prior to the seizure.

After the decisions in *Sniadach* and *Fuentes*, this Court rendered its decision in *State ex rel. Payne v. Walden, supra. Payne* involved a permanent taking of property under West Virginia distress warrant procedures,[1] leaving the debtor remediless save an independent action for damages or the posting of a "double bond". We held that the distress for rent statute, which denies notice and opportunity for hearing before deprivation of property, deprives the property owner of due process in contravention of Article III, Section 10 of the Constitution of West Virginia and the Fourteenth Amendment to the United States Constitution.

Similarly at this juncture in the development of the federal concept of prejudgment remedies and due process guarantees, the United States District Court for the Southern District of West Virginia rendered its decision in *Union Barge Line Corp. v. Marble Cliff Quarries Co.*, 374 F.Supp. 834 (S.D. W. Va. 1974). In the *Union Barge* decision, the District Court held that the West Virginia attachment-garnishment procedures were constitutionally deficient for lack of a preseizure hearing to evaluate the probable validity of the underlying claim.

Were we to decide this case in the same posture as the Federal District Court, we might be compelled to agree with the decision in *Union Barge*. The continued validity

---

[1]*W. Va. Code*, 37-6-9, *et seq.*

of its principles, however, as well as those of *Sniadach* and *Fuentes*, has been significantly challenged by the later United States Supreme Court decisions in *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, (1974), and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975).

Unlike the composition of the Court in *Fuentes*, *Mitchell* was decided by a nine-judge Court—with Justices Powell and Rhinquist as participators. In *Mitchell* the Court upheld the Louisiana sequestration statutes, distinguishing, if not overruling, the *Sniadach-Fuentes* pre-seizure principle. The Court in *Mitchell* determined that due process was satisfied when the creditor was required to assert a factual basis for his prejudgment relief in circumstances which permitted some judicial scrutiny prior to seizure and when the debtor could obtain an *early* determination of the validity or probable validity of the claim and regain possession by posting bond.

Subsequently, *Di-Chem* was decided by the same judges who participated in the *Mitchell* decision. Had the Court intended in *Mitchell* to overrule *Fuentes*, it could have made that apparent from the *Di-Chem* opinion. Such was not the case. In *Di-Chem* the Court leaned the other way and held the Georgia garnishment procedures violative of due process. The concurring opinions of Justices Stewart and Powell note the apparent return to the principles of *Fuentes*. It appears to us that the critical distinctions between *Di-Chem*, where the garnishment statute was found deficient, and *Mitchell*, where the sequestration statute was upheld, are the immediacy of the hearing and judicial participation at the time the writ is issued.

If we were left to deciding the instant case in this posture, our task would be more difficult. Recently, however, in a per curiam decision, the United States Supreme Court abstained from deciding the constitutional validity of the New York attachment statutes and remanded the case to afford the parties an opportunity to

obtain a construction of the statutes from the New York courts. *Carey v. Sugar,* 425 U.S. 73, 47 L.Ed.2d 587, 96 S.Ct. 1208 (1976). Acknowledging that New York courts could conclude that a hearing would encompass the merits of the underlying claim, the Court in *Carey* provided the state court with the opportunity to avoid unconstitutionality by construing its statutes in a manner which would avoid friction with federal due process standards.

We are in no lesser position than the state of New York. We shall, therefore, examine our statutes in an attempt to avoid fatal friction with due process guarantees. The apparent areas of concern evident upon an analysis of federal decisions include: (A) the circumstances under which an attachment is effected; (B) the availability, scope and timing of a hearing thereupon; and (C) consumer protection procedures to regain possession of the property or damages for injury.

A

*W. Va. Code,* 38-7-1,[2] provides for the issuance of an order of attachment by the clerk of the court in which a contract or damage action is pending upon the filing of an affidavit. The affidavit must state the nature of the plaintiff's claim, the amount of the claim and the grounds for attachment. The grounds for attachment are limited to those instances specified in *W. Va. Code,*

---

[2]"In any action or proceeding at law or suit in equity for the recovery of any claim or debt arising out of contract, or to recover damages for any wrong, the plaintiff, at the commencement of the action, proceeding or suit, or at any time thereafter and before judgment, may have an order of attachment against the property of the defendant, on filing with the clerk of the court in which such action, proceeding or suit is about to be or is brought, his own affidavit or that of some credible person, stating the nature of the plaintiff's claim and the amount, at the least, which the affiant believes the plaintiff is justly entitled to recover in the action, proceeding or suit, and also that the affiant believes that some one or more of the grounds mentioned in the next following section [§38-7-2] of this article exist for such attachment."

[3]"The grounds upon which an order or attachment may issue, under the preceding section [§38-7-1], are the following: (a) That the

38-7-2,[3] and the affidavit cannot issue upon a conclusory recitation that one or more of these grounds exist. Unless the defendant is a foreign corporation or a nonresident of this State, the affidavit must contain the "material facts" relied upon to show the existence of the grounds upon which the application for attachment is based. *W. Va. Code*, 38-7-3.[4] It has long been the law in this jurisdiction that conclusory recitation of statutory grounds is insufficient to sustain an order of attachment. *Littlestown Savings Institution v. Bream*, 95 W. Va. 351, 121 S.E. 169 (1924); *Goodman v. Henry*, 42 W. Va. 526, 26 S.E. 528 (1896). The statement of material facts in the affidavit must be certain and definite so as to inform those who may defend of the facts they must repel. *Commonwealth Tire Co. v. Tri-State Tire Co.*, 156 W. Va. 351, 193 S.E.2d 544 (1972). In *Union Barge*, the United States District Court upheld the validity of the statutes against a challenge based on the conclusory nature of the affidavit.

We are not persuaded that lack of a judge personally issuing the writ, a positive factor in *Mitchell*, is a fatal

---

defendant, or one of the defendants, is a foreign corporation or is a nonresident of this State; or (b) has left, or is about to leave the State, with intent to defraud his creditors; or (c) so conceals himself that a summons cannot be served upon him; or (d) is removing or is about to remove, his property, or the proceeds of the sale of his property, or a material part of such property or proceeds, out of this State, so that process of execution on a judgment or decree in such action or suit, when it is obtained, will be unavailing; or (e) is converting, or is about to convert, his property, or a material part thereof, into money or securities, with intent to defraud his creditors, or (f) has assigned or disposed of his property or a material part thereof, or is about to do so, with intent to defraud his creditors; or (g) has property or rights in action, which he conceals, or (h) fraudulently contracted the debt or incurred the liability for which the action or suit is about to be or is brought."

[4]"Unless the attachment is sued out upon the first of the grounds mentioned in the preceding section [§38-7-2], the affiant shall also state in his affidavit the material facts relied upon by him to show the existence of the grounds upon which his application for the attachment is based."

defect in our procedure.[5] The Supreme Court has consistently authorized the supervision of ex parte proceedings by a neutral officer or magistrate. *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L.Ed.2d 656, 93 S.Ct. 1756 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972). Such a suggestion is noted in the concurring and dissenting opinions in *Di-Chem*.

We find, therefore, that the filing of an affidavit, which contains specific factual allegations, and the issuance of the order of attachment by the clerk, an officer of the court, upon a determination that the statutory mandates have been met, is consistent with due process guarantees.

## B

Under *W. Va. Code*, 38-7-32,[6] a defendant may challenge the attachment *"eo instante . . .* by motion to quash or, under the Rules, by motion to dismiss." *M. W. Kellogg v. Concrete Accessories Corp.*, 157 W. Va. 763, 204 S.E.2d 61, 65 (1974). By proper compliance with the rules, the defendant may obtain an *immediate* hearing upon the sufficiency of the plaintiff's affidavit. The hearing procedure under the attachment statutes differs materially from the distress procedures considered in *State ex rel. Payne v. Walden, supra*. In *Payne* the tenant's right to contest the taking of his property or the amount, if any, of the rent due occurred only if the tenant posted a forthcoming bond and the landlord instituted an action for breach of the conditions of the bond. The constitutional deficiencies we found in *Payne* are

---

[5]While the facts in *Mitchell* included judicial issuance of the writ in the particular parish where the case arose, the State statute in all other local jurisdictions authorized issuance by a court clerk.

[6]"The right to sue out an attachment may be contested, and when the court is of opinion that the facts stated in the affidavit or amended affidavit were not sufficient to authorize the issuing thereof, or that the affidavit is otherwise insufficient, judgment shall be entered that the attachment be quashed."

not ameliorated by the conclusion we reach today with respect to the attachment procedures.

The scope of the hearing available under the attachment statute encompasses a determination of the probable validity of the underlying claim as well as the existence of grounds for attachment. This holding is consistent with an in pari materia reading of our statutes which collectively require a showing of the *existence*, the *nature*, and the *amount* of the claim as well as specialized grounds before an attachment may validly issue. The defendant further may attack even a superficially sufficient affidavit by controverting the existence of the grounds or the facts relied upon to substantiate these grounds. A trial by jury is available to resolve factual issues. *W. Va. Code*, 38-7-33.[7]

The nature and scope of the hearing afforded by *W. Va. Code*, 38-7-32, thus satisfies the due process requirements noted in *Mitchell* and *Di-Chem*.

## C

Finally, we are persuaded that the attachment procedures embodied in Article 7 of Chapter 38 have constitutional validity because of the specialized protections afforded the consumer-debtor. A plaintiff seeking posses-

---

[7]"Any person entitled to defend in any attachment proceeding may controvert the existence of the grounds of the attachment and of the facts relied upon to show the existence of such grounds, as such grounds and facts are stated in the affidavit, or in any amendment thereto, and may file an answer in writing denying the existence of such grounds and facts in any proceeding at law or in equity, such answer to be verified as any other pleading. The issue on such answer shall be tried by a jury, unless trial by jury be waived by the parties. The affirmative of such issue shall be with the plaintiff to prove the existence of such grounds and facts, sufficient to sustain the attachment, and, if the verdict be for the defendant, judgment shall be entered abating and discharging the attachment, and awarding to the defendant his costs, and ordering the restoration to him of the attached property. The court may grant new trials as in other cases, and either party may have the judgment reviewed upon a writ of error or appeal as the case may be, as in other actions."

sion of assets or property by attachment must post a "double bond" conditioned to pay all costs and damages awarded against him or sustained by the executing officer or other person and to pay the claimant of any property seized all damages which he may sustain in consequence of seizure or sale. *W. Va. Code*, 38-7-8.[8] The defendant or other interested person may except to the sufficiency of the bond by petitioning the court and the court may quash the attachment unless proper bond is given. *W. Va. Code*, 38-7-11.[9] In addition, any property seized may be returned to the possession of the defendant by posting a forthcoming bond. *W. Va. Code*, 38-7-20.[10]

---

[8]"If the plaintiff shall, at the time of suing out an attachment, or afterwards, give bond with good security, approved by the clerk issuing the attachment, in a penalty of at least double the estimated value of the property to be attached, as shown by the affidavit of the plaintiff or some reliable person, with condition to pay all costs and damages which may be awarded against him, or sustained by any officer or other person by reason of the suing out of the attachment or levying the same, and to pay, to any claimant of any property seized or sold under or by virtue of such attachment, all damages which he may sustain in consequence of such seizure or sale, such officer shall take possession of the personal property levied upon by virtue of such attachment. But the clerk shall in no case accept such bond, the penalty of which shall be less than five hundred dollars."

[9]"Any defendant in the case, or any person interested in the property so attached, who shall consider the bond so given not proper in form, or the penalty or security insufficient, may apply at once, by petition to the court from which the attachment issued, if in session, and if not, to the judge thereof, in vacation, and shall be permitted to except to such bond, on any or all grounds aforesaid, and if any of such exceptions be sustained, the attached property shall be returned to the person from whom it was taken by the officer and the attachment shall be quashed unless the plaintiff shall within such time as the court shall prescribe, give a proper bond, in a sufficient penalty and with surety sufficient, all to be approved by the court or judge hearing the exceptions. If such new bond be not given, the principal and surety in such original bond, who signed the same, shall be liable to any person who shall suffer any damage by reason of the suing out and levy of such attachment, to the extent of the penalty thereof."

[10]"Any property seized under any attachment, where the plaintiff has given bond, may be retained by, or returned to, the person in

The use of attachment procedures as a prejudgment remedy has an historic basis in this State. It assures the availability of assets to respond to a final judgment of the court. It is ill becoming a defendant, under claim of due process, to intentionally posture himself to fraudulently evade his legal obligations. A defendant who cannot successfully challenge an affidavit, which avers acts calculated to relieve him of the legal consequences of his obligations, should not be permitted to use the law as a sword to strike down the rightful claims of others.

In view of the many adequate protective procedures afforded by the attachment statute, we hold that those provisions of Article 7 of Chapter 38 of the *West Virginia Code* are not in contravention of either Article III, Section 10 of the *Constitution of West Virginia* or the Fourteenth Amendment to the *United States Constitution.*

For the reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for such proceedings as are consistent with the rulings expressed herein.

*Reversed and remanded.*

---

whose possession it was, on his giving bond, with condition to have the same forthcoming at such time and place as the court may require; or the defendant in any attachment may release from the attachment the whole of the estate attached, by giving bond, with condition to perform the judgment or decree of the court. The bond, in either case, shall be taken by the officer serving the attachment, with security, payable to the plaintiff, and in a penalty, in the latter case, of at least the amount of the claim for which the attachment issued, with the costs, and in the former, either of the amount of the claim for which the attachment issued, with the costs, or of the value of the property retained or returned, at the option of the person giving it."