STATE *ex rel.* MICHAEL J. YANERO, *et al.*

*v.*

THE HON. FRED L. FOX, II, *Judge, etc., et al.*

(No. 14207)

Decided June 19, 1979.

*Kay, Casto & Chaney, George S. Sharp and Michael Bonasso* for relators.

*Furbee, Amos, Webb & Critchfield, Alfred J. Lemley* for respondents.

HARSHBARGER, JUSTICE:

Petitioners seek to prohibit Westinghouse Credit Corporation's use of West Virginia's detinue statute, *W. Va. Code,* 55-6-1 *et seq.,* to seize petitioners' property prior to judgment.

Beckwith Machinery Company leased a tractor to Yanero by an installment contract and assigned the contract to WCC; sold another tractor to Yanero by a conditional sales contract which was then assigned to WCC; and sold a tractor to Nationwide Fuels, Inc., by a conditional sales contract which also was assigned to WCC.[1]

WCC sued on April 19, 1978, in the Circuit Court of Marion County alleging past due payments on the three machines, to collect the debt and repossess them. It filed a bond and affidavit prescribed by *Code,* 55-6-1, to get prejudgment possession of the tractors, and the court clerk issued attachment orders, one of which apparently was executed.

On April 27, the court received a supplemental affidavit by WCC's credit manager, and on May 4 ordered the sheriffs of Marion and Harrison counties to seize the equipment.[2] These orders were entered without notice or hearing to petitioners, and also before the expiration of petitioners' time to answer the complaint. But petitioners moved the circuit judge to quash his orders, prompting a hearing after which the court denied the motion

---

[1]These were no ordinary garden-type tractors. The lease price was $269,417.52, payable in installments over a three year term; the sale price on the Beckwith-to-Yanero implement was $248,383.90, also payable in installments in three years; and the Nationwide tractor—used—was priced at $115,892.64, to be paid over a two year term.

[2]The supplemental affidavit described the machinery, its cost, the various agreements between petitioners and WCC, the affiant's po-

but suspended his orders to allow petitioners to apply to us for prohibition.[3]

Is our detine statute, *Code,* 55-6-1 *et seq.,* constitutional?

§ 55-6-1. *Plaintiff's affidavit and bond in detine actions; contents thereof.*

If the plaintiff in an action of detine shall desire to have immediate possession of the property for the recovery of which such action is brought, he may, at the *commencement of the action, or at any time thereafter* and before judgment, file with the clerk of the court in which the action is brought, or, if the action is brought before a justice, with the justice before whom the same is brought or is pending, an affidavit stating the kind, quantity, and value of the property claimed by the plaintiff in such action, and that the affiant verily believes the plaintiff is entitled to recover the same therein. He shall also, in such case, execute a bond, with good security, to be approved by the clerk or justice, in a penalty at least double the value of the property claimed, payable to the defendant with condition to pay all costs and damages which may be awarded against him, or sustained by any person by reason of such suit, and to have the property so claimed forthcoming to answer any judgment or order of the court or justice respecting the same made at any time during the pendency of

---

sition with the company and his familiarity with petitioners' accounts, petitioners' alleged failure to make the required payments *under the various agreements* and concluded that WCC was entitled to possession of the property. The original affidavit which was the basis of the attachment orders issued by the clerk merely described the property and said that the credit manager believed WCC was entitled to it.

[3]The court's action related to two machines. In their answer petitioners alleged that they had made the required payments on one tractor. The court suspended its order about this machine for seven days to determine whether petitioner had made payments to bring the account current.

the action, and shall file such bond with the clerk or justice. [Our emphasis]

## § 55-6-2. *Order for seizure of property.*

If such affidavit and bond be filed at the commencement of the action, the clerk or justice shall indorse on the summons an order to the officer to whom the same is directed to seize and take into his possession the property mentioned in such summons. But if the same be filed after the commencement of the action, the clerk or justice shall issue an order reciting the pendency of the action, and stating the kind, quantity, and value of the property for which the action is brought, and requiring the officer to whom the same is directed to seize and take into his possession the property mentioned in such order.[4]

---

[4]The article continued:

§ 55-6-3. *Seizure of property by officer.*

It shall be the duty of the officer to whom any such summons or order is delivered to proceed forthwith to execute the same; and he may, if necessary, break open and enter any house or other inclosure in which such property may be, in order to seize the same.

§ 55-6-4. *Return of property to defendant upon execution of bond.*

The defendant in any such action may have the porperty taken possession of by such officer, by virtue of such summons or order, returned to him at any time within three days after such taking, upon executing a bond with good security, to be approved by such officer, payable to the plaintiff, in a penalty at least double the value of such property, with condition to pay all costs and damages which may be awarded against him in such action, and all damages which may be sustained by any person by reason of the return of such property to him, and to have the property forthcoming to answer any judgment or order of the court or justice respecting the same made at any time during the pendency of the action; which bond shall be delivered to such officer, and by him returned to the office of the clerk or justice who issued such summons or order. Upon the reception of such bond by the officer aforesaid, he shall forthwith return the property taken by him to the defendant; but in case no such bond be delivered to such officer within such three days, the property shall be delivered by an officer to the plaintiff.

§ 55-6-5. *Exception to sufficiency of sureties.*

Either party may, upon reasonable notice to the other, except to the sufficiency of the sureties in the bond of such other party and

There were many prejudgment methods to get at property possessed by others before the United States Supreme Court, in a series of noteworthy opinions, wrote about the due process problems they created. In *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), it declared a Wisconsin statute that authorized prejudgment garnishment of wages without prior notice and hearing to be unconstitutional. That statute allowed a court clerk to issue an attachment at the request of a creditor's lawyer, who by serving the employer, could then freeze a debtor's wages until the debtor won his or her case.

---

the court, or the judge thereof in vacation, or the justice before whom such action is pending, may, upon the hearing of such exceptions, make such order in the premises as may seem just and equitable.

§ 55-6-6. *Verdict and judgment.*

Upon the final trial of any such action, if the verdict be for the plaintiff, and he be not already in the possession of the property claimed, the judgment shall be that he recover the possession of such property, if a recovery thereof can be had; and if not, that he recover the value thereof as found by such verdict; and, in either event, that he recover the damages assessed by the jury for the detention of such property, and his costs in such action. And it shall be the duty of the jury in such cases to ascertain and assess such damages as the plaintiff has sustained by reason of the detention of such property by the defendant. If the plaintiff be already in possession of such property, the judgment shall be that he retain the possession thereof, and for damages and costs, as aforesaid. In case the verdict at such trial be for the defendant, if the plaintiff be in possession of the property claimed, the judgment shall, in like manner, ascertain and assess the damages sustained by the defendant by reason of the detention of such property by the plaintiff and also the value of such property, and judgment shall be entered upon such verdict in all respects as is provided in case the verdict be for the plaintiff. If, on an issue concerning several things in one count, no verdict be found for part of them, it shall not be error, but the plaintiff shall be barred of his title to the things omitted; and if the verdict omit price or value, the court may at any time have a jury impaneled to ascertain the same.

§ 55-6-7. *Execution.*

The execution issued in such cases shall conform in all things to the judgment entered therein.

The Court perceived that it was dealing with "a specialized type of property presenting distinct problems in our economic system." It mentioned hardships caused by the procedure and the leverage a creditor has against a debtor and concluded: "Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing (cf. Coe v. Armour Fertilizer Works, 237 U.S. 413, 423, 59 L.Ed. 1027, 1031, 35 S.Ct. 625) this prejudgment garnishment procedure violates the fundamental principles of due process." 395 U.S. at 342. Justice Harlan, concurring, added that the taking was not *de minimis;* thus, it required due process which could be satisfied only by notice and hearing. ". . . I think that due process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property or its unrestricted use. I think this is the thrust of the past cases in this Court." [Citations omitted] 395 U.S. at 343. Justice Black dissented because he thought the Court had decided the case on policy, not constitutional bases.

*Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) involved the constitutionality of prejudgment replevin statutes in Florida and Pennsylvania. Florida law provided that a complaint stating that complainant was lawfully entitled to property, and a bond for double the property's value, be filed. The sheriff was required to keep seized property for three days during which a debtor could retrieve it by filing his own "double" bond. If the debtor filed no bond, the property went to complainant. Pennsylvania's law differed slightly. It required no court action at all—there might never be a hearing on the merits of conflicting claims to possession of property. Pennsylvania only required an affidavit stating the property's value. A creditor need not allege that he was lawfully entitled to it, nor give notice to its possessor. There was no prescribed pre-seizure hearing.

The court held that notice and opportunity to be heard must be granted at "a meaningful time and in a meaningful manner. . . ."

> The primary question in the present cases is whether these state statutes are constitutionally defective in failing to provide for hearings "at a meaningful time." The Florida replevin process guarantees an opportunity for a hearing after the seizure of goods, and the Pennsylvania process allows a post-seizure hearing if the aggrieved party shoulders the burden of initiating one. But neither the Florida nor the Pennsylvania statute provides for notice or an opportunity to be heard *before* the seizure. The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing *before* the State authorizes its agents to seize property in the possession of a person upon the application of another.
>
> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. [Citation omitted] 407 U.S. at 80, 81.

The meaningful time referred to was when deprivation could still be prevented. It did not matter that under a conditional sales contract, title remained in a seller until the buyer made the last payment. Also, the merits of the basic claim were irrelevant. Citing *Sniadach*, the Court

said that no distinctions were to be made in types of property. Property accorded due process protection was not limited to necessities.

Finding that "[T]he Florida and Pennsylvania prejudgment replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor," [407 U.S. at 96] the Court added:

> Our holding, however, is a narrow one. We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation—not adjudication. [Footnote omitted] Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. "[D]ue process is afforded only by the kinds of 'notice' and 'hearing' that are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property. . . ." [Citations omitted] 407 U.S. at 96, 97.

*Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) tested the constitutionality of a Louisiana sequestration statute. A state court judge ordered sequestration of personal property on application of a creditor who had made an installment sale to petitioner and whose affidavit asserted delinquency and prayed for enforcement of a vendor's lien. The procedure was *ex parte* without prior notice or hearing. The creditor affirmed that it believed the debtor would dispose of the property. It posted a "double" bond.

The Court found the statute valid, reasoning that: (1) a conditional sales contract made the property not exclusively the debtor's, both debtor and creditor having interests in it; (2) property deteriorates when a debtor uses it even after payments are no longer being made; (3) there is always a risk that a debtor will conceal goods.[5]

The Court concentrated on the respective interests of the parties. "[T]his statutory procedure effects a constitutional accommodation of the conflicting interests of the parties. ..." "Considering the Louisiana procedure as a whole, we are convinced that the State has reached a constitutional accommodation of the respective interests of buyer and seller." 416 U.S. at 607 and 610.

*Sniadach* was distinguished because it involved a distinct type of property—wages; *Fuentes*, because there were broader fault standards upon which seizure could be predicated which were "inherently subject to factual determination and adversarial input." 416 U.S. at 617. The Louisiana statute contained a more narrowly defined basis for repossession and therefore there was less danger that seizure would be improper.

---

[5]Also, (1) the statute provided for sequestration only where "one claims the ownership or right to possession of property, or a mortgage, lien or privilege thereon ... if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action," (2) a writ would not issue upon a conclusory allegation of ownership or possessory rights, (3) a writ would emerge "only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts" shown by a verified petition or affidavit, (4) judicial authority for a writ was required in the particular parish involved (although the statute allowed court clerks to issue them), (5) a "sufficient" bond was required, (6) although the writ was obtainable *ex parte*, without notice or hearing the statute authorized a debtor immediately to seek dissolution, which was to be ordered unless a creditor proved "the grounds upon which the writ was issued," (7) a debtor could regain the property in the interim by filing his own bond. [416 U.S. at 605–607]

To summarize, the Louisiana system seeks to minimize the risk of error of a wrongful interim possession by the creditor. The system protects the debtor's interest in every conceivable way, except allowing him to have the property to start with, and this is done in pursuit of what we deem an acceptable arrangement *pendente lite* to put the property in the possession of the party who furnishes protection against loss or damage to the other pending trial on the merits. 416 U.S. at 618.

Finally, *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) examined a Georgia statute authorizing a plaintiff in a pending suit "to the process of garnishment" upon affidavit about the amount claimed due and that it would be lost unless garnishment was obtained. The statute also required plaintiff to post a "double" bond. A defendant could dissolve the garnishment by posting bond.

The Court held the Georgia statute invalid for *Fuentes* reasons: there was no notice or prior hearing before seizure. *Di-Chem*'s garnished property was a bank account but the Court did not distinguish between kinds of property:

It may be that consumers deprived of household appliances will more likely suffer irreparably than corporations deprived of bank accounts, but the probability of irreparable injury in the latter case is sufficiently great so that some procedures are necessary to guard agains the risk of initial error. 419 U.S. at 608.[6]

---

[6]The Georgia prejudgment seizure scheme was examined in *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526 (5th Cir. 1978). The statute provided that the party seeking attachment make an affidavit and give bond before a "judge of the supreme court, judge of the county court, judge of the city court, magistrate, justice of the peace, or clerk of any court of record," stating the amount claimed to be owed and that the property's recovery was apt to be frustrated in certain ways, by the debtor. No prior hearing was required. A "declaration in attachment" which served as a complaint was to be

*Mitchell* was distinguished because its writ was issuable only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration. The Louisiana statute also provided for an immediate hearing, and if the debtor prevailed, the writ was dissolved. The Georgia statute had no such saving characteristics.

Our detinue statute is very similar to Georgia's. A federal district court in *Hamrick v. Ashland Finance Co.,* 423 F. Supp. 1033 (S.D. W. Va. 1976) held it facially violated both the federal Fourth Amendment prohibition against unreasonable searches and seizures, and the Due Process Clause, because it provided that a court clerk or justice, upon receiving a conclusory affidavit, must issue a writ compelling an officer of the state to break in and seize items wherever they might be found. In *Shaffer v. Holbrook,* 346 F. Supp. 762 (S.D. W. Va. 1972) our summary distress procedure was held unconstitutional by *Sniadach* and *Fuentes* standards. In *State ex rel. Payne v. Walden,* 190 S.E.2d 770 (1972) we agreed.[7]

---

filed within 15 days, if the property was not already a subject of a pending suit.

The court found the statute unconstitutional. After a brief analysis of the four relevant United States Supreme Court cases which we have already discussed, the court wrote: "It seems clear, then, that due process requires that a prejudgment seizure be authorized by a judge who has discretion to deny issuance of the appropriate writ. [Footnote omitted] Because the Georgia prejudgment attachment scheme does not provide this procedural guarantee, we hold that it is facially unconstitutional." [581 F.2d at 534] *See also,* n. 16, 581 F.2d at 534.

[7]*But see, Cook v. Lilly,* 208 S.E.2d 784 (1974), in which Justice Neely wrote that self-help repossession provided by *Code,* 46-9-503, 504 is not invalid under the Fourteenth Amendment to the United States Constitution and Art. 3, § 10 of the West Virginia Constitution. He wrote that the Supreme Court had retreated dramatically from their holding in *Fuentes* when it decided *Mitchell* and used a rational balancing test of interests of debtors and creditors. We distinguish *Cook* because it turned upon self-help repossession not being state action. One is entitled to due process frm his government but not from his fellow citizens, except if the fellow citizen is aided by the government. It would seem that "mere" statutory

In *Persinger v. Edwin Associates, Inc.*, W. Va., 230 S.E.2d 460 (1976) we found that statutory procedures governing attachment in West Virginia do not violate due process.

> If we were left to deciding the instant case in this posture, our task would be more difficult. Recently, however, in a per curiam decision, the United States Supreme Court abstained from deciding the constitutional validity of the New York attachment statutes and remanded the case to afford the parties an opportunity to obtain a construction of the statutes from the New York courts. *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976). Acknowledging that New York courts could conclude that a hearing would encompass the merits of the underlying claim, the Court in *Carey* provided the state court with the opportunity to avoid unconstitutionality by construing its statutes in a manner which would avoid friction with federal due process standards.

> We are in no lesser position than the state of New York. We shall, therefore, examine our statutes in an attempt to avoid fatal friction with due process guarantees. The apparent areas of concern evident upon an analysis of federal decisions include: (A) the circumstances under which an attachment is effected; (B) the availability, scope and timing of a hearing thereupon; and (C) consumer protection procedures to regain possession of the property or damages for injury. 230 S.E.2d at 463.

We would certainly attempt to avoid "friction with due process." And because there was a meaningful hearing that went to the merits of the credit corporation's claim, sufficiently impacting to prompt the learned trial judge to suspend execution of attachment on one of the tractors until he could determine whether petitioner had

---

authorization of self-help is not such governmental action as would invoke due process protections, under *Cook*.        .

made payments to bring the account current, we find due process has not been frictionized *in this case.*

We are not persuaded that rational balancing tests are anything other than vehicles for judicial sophistry. Therefore, we insist that whenever the government for itself or for litigants, takes property in the possession of one and delivers it to another, a prior hearing is necessary.

Article III, § 10 of the West Virginia Constitution demands it.[8] This is so, whatever the *ex parte* affidavits by the would-be possessor, or how clothed with authority the magistrate who would order the seizure.

The prejudgment seizure procedure in our statute *as written* is unconstitutional because it fails to provide an opportunity for hearing before property is taken. But because the procedure was augmented when the trial court gave a pre-seizure hearing on petitioners' motion to quash the attachment orders, we deny the writ.[9]

*Writ denied.*

McGRAW, JUSTICE, *concurs in part and dissents in part:*

I concur with the opinion of the Court in its holding that the pre-judgment seizure procedure in the statute in issue is unconstitutional.

I respectfully dissent from the majority holding that the statutory defect was cured when the trial court afforded petitioners a belated hearing upon their motion to quash.

---

[8]Article III, § 10:
Safeguards for Life, Liberty and Property

No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

[9]According to the record, the hearing consisted only of argument by counsel. No evidence was taken, but apparently none was proferred, and the parties do no complain about its actual sufficiency. *See,* n. 3, *supra.*

The petitioners should be afforded the full constitutional benefits to which they are entitled.

The writ should be awarded.