309 S.E.2d 73

**TOMCHIN FURNITURE CO., etc.**

v.

**Garth LESTER, Jr., et al.**

No. 15920.

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

Norman Googel, Welch, for appellants.

David L. Tomchin, pro se.

MILLER, Justice:

We are asked in this appeal to determine the scope of the preseizure or prejudgment hearing as provided in our detinue statute, W.Va.Code, 55–6–1 (1981).[1] The defendants, Garth and Ruth Lester, who had purchased various items of furniture from the plaintiff, Tomchin Furniture Company, claim that they were precluded from asserting valid defenses at the preseizure hearing.

They purchased furniture in August and September, 1981, under two retail installment agreements totalling $2670.96. The defendants still owed $1905.96 when they ceased making payments on the debt. On March 31, 1983, the furniture company filed a detinue action against the Lesters, pursuant to W.Va.Code, 55–6–1 (1981), seeking possession of the furniture. The defendants filed an Answer and Counter-claim asserting that the plaintiff held an invalid security interest in the furniture because the furniture was not adequately identified as required by W.Va.Code, 46A–2–107(4).[2] Defendants counterclaimed for damages based on the plaintiff's alleged violation of W.Va.Code, 46A–3–109(2)(e) (1981),[3] with regard to the credit life insurance premium which was included in the defendants' sales contracts.

A prejudgment hearing for immediate repossession was held in the Circuit Court of Wyoming County on May 20, 1983. The plaintiff called one witness, the credit manager of Tomchin Furniture Company. She testified as to the amount of money originally owed by the defendants, how much they had paid and how much was still due. When the defendants' attorney began cross-examining the witness, he asked about the method used to determine how each payment was divided between the principal and the finance and insurance charges. The plaintiff's attorney objected to the relevance of this information and the trial court sustained the objection.

The trial court held that the function of the preseizure hearing is to determine whether the plaintiff has a *prima facie* case. The trial court refused to allow the defendants to present any evidence or to make any arguments concerning a defense to the debt except as the trial court stated, "[t]he only thing you can attempt to show is that these defendants don't owe any-

---

1. W.Va.Code, 55–6–1 (1981), states:

   "If the plaintiff in a civil action, whether in a circuit court or magistrate court, for the recovery of specific goods, chattels, or intangible personal property, shall demand immediate possession thereof, a prejudgment hearing shall be held in not less than five nor more than ten days after service upon the defendant of the summons, a verified complaint describing said personal property, and a notice of the time, place, and purpose of the prejudgment hearing. At the prejudgment hearing an inquiry shall be held to determine: (a) the nature of the right or contract under which the plaintiff claims a right to immediate possession; and (b) the nature of the defendant's right to retain possession thereof."

2. W.Va.Code, 46A–2–107(4), provides:

   " 'Security interest' as used in this section means a security interest arising by agree-ment of the parties and does not include a lien arising by operation of law. Any such agreement must contain a description of the security interest retained and must contain a clear identification of each particular item of collateral, including if appropriate, the name of the manufacturer of such item and its make, model and serial number. If the item is a used or rebuilt sample or demonstrator, such fact shall also be stated in the security agreement."

3. W.Va.Code, 46A–3–109(2)(e) (1981), provides:

   "With respect to consumer credit insurance providing life, accident, health or loss of income coverage, no creditor shall require a consumer to purchase such insurance or to purchase such insurance from such creditor or any particular agent, broker or insurance company as a condition precedent to extending credit to or on behalf of such consumer."

thing to Tomchin Furniture." The trial court held that all other issues could be presented at the ultimate trial on the merits. Because the defendants could not show there was no debt, the trial court ordered the furniture to be seized but entered a stay for the purpose of this appeal.

The parties agree that W.Va.Code, 55–6–1 (1981), requires that a prejudgment hearing be held before a plaintiff is allowed to recover personal property under our detinue statute. It is the scope of the hearing that is in dispute. This statute provides, in part, that "[a]t the prejudgment hearing an inquiry shall be held to determine: (a) the nature of the right or contract under which the plaintiff claims a right to immediate possession; and (b) the nature of the defendant's right to retain possession thereof." This section must be read in conjunction with W.Va.Code, 55–6–2 (1981), which provides that "[i]f the court or magistrate shall conclude, upon the basis of the evidence adduced at such prejudgment hearing, that there is a substantial probability that the plaintiff will prevail upon trial of the action upon the merits," then the property may be seized after the plaintiff posts a bond.

■ These statutory provisions requiring a prejudgment hearing were passed by the Legislature in 1981 in response to a series of United States Supreme Court cases,[4] a federal district court case,[5] and decisions by this Court which declared that certain prejudgment seizures involving state actions and which are conducted without notice and hearing were a violation of procedural due process. In Syllabus Point 1 of *State ex rel. Yanero v. Fox*, 163 W.Va. 222, 256 S.E.2d 751 (1979), we held that:

"Article III, § 10, West Virginia Constitution, our 'due process' clause, requires that whenever the government for itself or for litigants, takes property from the possession of a person, a preseizure hearing be held to determine whether the seizure is rightful, except when such taking is a justifiable exercise of the police power of the state."

*See also Anderson v. George*, 160 W.Va. 76, 233 S.E.2d 407 (1977); *State ex rel. Payne v. Walden*, 156 W.Va. 60, 190 S.E.2d 770 (1972).

The underlying rationale is that where the state action involved is a proceeding invoked by a creditor to seize property of a debtor, a preseizure hearing is needed to satisfy procedural due process.[6]

The parties do not claim that W.Va.Code, 55–6–1 (1981), is unconstitutional because it is too narrowly drawn and thus constricts the constitutional procedural due process rights afforded. Such a claim would be difficult to sustain in view of the United States Supreme Court's reluctance to spell out in detail the nature of the preseizure hearing as evidenced by this statement from *Fuentes v. Shevin*, 407 U.S. 67, 96–

---

**4.** *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

**5.** *Hamrick v. Ashland Finance Co.*, 423 F.Supp. 1033 (S.D.W.Va.1976) (detinue statute violates due process).

**6.** In *Fuentes v. Shevin*, 407 U.S. 67, 80–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556, 570–71 (1972), the United States Supreme Court stated:

"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party.

\* \* \* \* \* \*

"If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred."

97, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556, 579 (1972):

> "We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation—not adjudication." (Footnote omitted)

In *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349, 352 (1969), the Court commented on the denial of "any opportunity to be heard and to tender any defense he may have, whether it be fraud or otherwise."

As noted in *Scutti Pontiac, Inc. v. Rund*, 92 Misc.2d 881, 402 N.Y.S.2d 144 (1978), there is a paucity of authority that deals with the question of the precise scope of a preseizure hearing. The few decisions which can be found in this area hold that a debtor is entitled to be heard on a defense that would defeat the underlying debt or which would defeat the creditor's security interest in the goods sought to be repossessed. *Bennett v. Wright*, 79 Mich.App. 566, 263 N.W.2d 17 (1977) (debtor claimed mistake as to property covered); *Detroit & Northern Savings & Loan Ass'n v. Woodworth*, 54 Mich.App. 517, 221 N.W.2d 190 (1974) (debtor entitled to show goods were defective and not all had been delivered to him); *Scutti Pontiac, Inc. v. Rund, supra* (fraud in the inducement of the original sale).[7]

■ We believe that because W.Va.Code, 55–6–1 (1981), requires that at the prejudgment or preseizure hearing consideration be given to "the nature of the right or contract under which the plaintiff claims a right to immediate possession" coupled with "the nature of the defendant's right to retain possession," that the preseizure inquiry cannot be confined solely to a consideration of the plaintiff's right to recover. The statute, by referring to the "defendant's right to retain possession," must be taken to mean that the defendant is able to present defenses that would defeat the underlying debt or the right to assert the security interest.

Having decided that defenses may be presented at the preseizure hearing, we turn to the specific defenses which the Lesters tried to present: the validity of the security interest, and the allegedly deceptive sale of credit life insurance under the West Virginia Consumer Credit and Protection Act, W.Va.Code, 46A–1–101, *et seq.*

■ The defendants maintain that Tomchin Furniture Company created an invalid security interest because the furniture was not adequately identified in the financing agreements. While this is not a defense to the debt, defendants assert that this does void the security right on which the plaintiff relies to obtain the goods. We are cited the West Virginia Consumer Credit and Protection Act, W.Va.Code, 46A–2–107(4), which provides in relevant part:

> " 'Security interest' as used in this section means a security interest arising by agreement of the parties and does not include a lien arising by operation of law. Any such agreement must contain a description of the security interest retained and must contain a clear identification of each particular item of collateral, including if appropriate, the name of the manufacturer of such item and its make, model and serial number."

---

7. This conclusion is made in Clark & Landers, *Sniadach, Fuentes and Beyond: The Creditor Meets the Constitution*, 59 Va.L.Rev. 355, 408 (1973):

"Our conclusion, therefore, is that all issues may be raised at a hearing for preliminary relief which are permitted by the substantive law of the state. In the consumer credit context these issues will typically consist of all possible personal defenses which justify non-payment as a matter of contract law. On these issues the party seeking the relief will have to show both a substantial probability of prevailing on the merits as well as a basis for prejudgment relief in private agreement, a danger if the use of services or facilities continues without payment, or a substantial risk that property will not be available to satisfy the judgment." (Footnotes omitted)

Defendants point to W.Va.Code, 46A–2–107(3), which states that "[a] security interest taken in violation of this section is void."

In addition to the Consumer Credit and Protection Act, both the Uniform Commercial Code, W.Va.Code, 46–1–101, *et seq.*, and the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*,[8] have identification requirements.[9] To have a valid security interest under the Uniform Commercial Code, the debtor must sign "a security agreement which contains a description of the collateral." W.Va.Code, 46–9–203(1)(a). Under W.Va.Code, 46–9–110, "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."[10]

There have been a number of cases decided under the Uniform Commercial Code where courts have held that the description of the property contained in the security agreement was too general to enforce recovery under the agreement. *E.g., American Restaurant Supply Co. v. Wilson*, 371 So.2d 489 (Fla.App.1979) (inadequate description which does not distinguish it from other similar goods owned by the debtor); *Aronson Furniture Co. v. Johnson*, 47 Ill.App.3d 648, 7 Ill.Dec. 776, 365 N.E.2d 61 (1977) (inadequate even under the general and less demanding standard in the U.C.C. if it describes a three-piece bedroom suite, box springs, and mattress, because it does not distinguish it from other similar goods); *In re Lehner*, 303 F.Supp. 317 (D.Colo. 1969), *aff'd*, 427 F.2d 357 (10th Cir.1970) (the term "consumer goods" is insufficient because it does not specify the "types or the items"); *In re Bell*, 6 U.C.C.Rep.Serv. 740 (D.Colo.1969) (the term "consumer

goods" is an insufficient description because it is "too broad"). *See generally* Beard, *The Description of Collateral in Security Agreements and Financing Statements*, 28 Mercer L.Rev. 611 (1977); Note, *Commercial Transactions: The Adequacy of the Description of Collateral in Uniform Commercial Code Financing Statements and Security Agreements*, 27 Okla.L.Rev. 469 (1974).

Although the UCC and the Truth-in-Lending Act require the collateral to be identified, the extent of identification is not as specific as that required by the Consumer Credit and Protection Act. As previously noted, the requirement under the Consumer Credit and Protection Act, W.Va. Code, 46A–2–107(4), is that the security agreement "must contain a clear identification of each particular item of collateral, including if appropriate, the name of the manufacturer of such item and its make, model and serial number."

■ In the retail sales agreements entered into between the defendants and Tomchin Furniture Company, the items financed were listed in terms such as "table," "chairs," "corner cabinet," together with the quantity, department, price, and a "number." Because the trial court did not allow evidence to be introduced on the adequacy of the descriptions, particularly the meaning of the numbers listed, we have no reviewable record as to the adequacy of the descriptions. We therefore remand the case for a hearing on this defense.

■ The defendants have presented a counterclaim, which they also appear to urge as a defense to the seizure, the essence of which is that the plaintiff sold the

---

**8.** The Federal Reserve Board has promulgated Regulation Z, 12 C.F.R. § 226, *et seq.*, under the Truth-in-Lending Act which also requires "[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates." 12 C.F.R. § 226.8(b)(5). *See also Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir.1976).

**9.** The requirement that the property be clearly identified has historic roots in our detinue law.

In *Robinson v. Woodford*, 37 W.Va. 377, 385, 16 S.E. 602, 605 (1892), the Court held that "[i]n the action of detinue the plaintiff must, by averment show the kind, quantity, and value of the property claimed, prove that defendant unlawfully detained it, and that he is entitled to recover the same." *See also Hefner v. Fidler*, 58 W.Va. 159, 52 S.E. 513 (1905).

**10.** For examples of sufficient descriptions, *see* Davenport and Murray, *Secured Transactions* 387–94 (1978).

defendants credit life and property insurance without affording them the opportunity to buy insurance elsewhere in violation of W.Va.Code, 46A–3–109(2)(d) & (e) (1981).[11] Even though there may have been a violation of these provisions, we do not believe it is a defense to the seizure of the property nor a defense to the underlying debt. If the defendants could prove there was a violation, they may have an action for damages or an offset to their debt, but we are not aware of any decision that holds that such a claim defeats the creditor's right to repossess the property.[12]

Furthermore, W.Va.Code, 46A–5–101 (1974), providing for civil liabilities and criminal penalties, provides in subsections (3) and (4) for the debtor to recover damages equal to any excess charges and a penalty of not less than one hundred nor more than one thousand dollars. There is no provision for cancellation of the security agreement and subsection (5) indicates that "[e]xcept as otherwise provided, a violation of this chapter does not impair rights on a debt." We find no provision authorizing cancellation of the debt because of the failure to advise of the right to obtain property and life insurance from someone other than the creditor.

For reasons stated in this opinion, the judgment of the Circuit Court of Wyoming County is reversed and remanded.

Reversed and Remanded.

---

**11.** W.Va.Code, 46A–3–109(2)(d) & (e) (1981), provides:

"(d) With respect to insurance against loss of or damage to property, or against liability, the creditor shall furnish a clear and specific statement in writing to the debtor, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the debtor may choose the person through whom the insurance is to be obtained; and

"(e) With respect to consumer credit insurance providing life, accident, health or loss of income coverage, no creditor shall require a consumer to purchase such insurance or to purchase such insurance from such creditor or any particular agent, broker or insurance company as a condition precedent to extending credit to or on behalf of such consumer."

**12.** As noted by one commentator:

"Although the required purchase of life, health, or accident insurance from the creditor or a designated agent, broker, or insurance company is disallowed under W.Va.Code Ann. § 46A–3–109(2)(e) (Cum.Supp.1974), any liability or penalty for enforcing such a requirement arises not from the violation of § 46A–3–109(2)(e) but from imposition of an excess finance charge." Cardi, *The West Virginia Consumer Credit and Protection Act,* 77 W.Va.L.Rev. 401, 460 n. 267 (1975).