DETROIT & NORTHERN SAVINGS & LOAN ASSOCIATION v
WOODWORTH

1. COURTS—SUPREME COURT—ADMINISTRATIVE ORDERS—COURT OF APPEALS.

The Court of Appeals is bound by administrative orders of the Supreme Court and must interpret the orders to the best of its ability.

2. REPLEVIN—SALES—CONTRACTS—INSTALLMENT SALES CONTRACTS—DEFENSES—BREACH OF WARRANTY—SHOW CAUSE HEARING—ADMINISTRATIVE ORDERS.

An administrative order of the Supreme Court allows the defendant in an action to recover the possession of personal property to introduce, at a show-cause hearing, evidence of a meritorious defense including the defense of breach of warranty; therefore, a trial court erred by limiting a show-cause hearing involving repossession of a mobile home sold under an installment sales contract to the questions of whether there was a contract, whether there was a default, and whether there was impairment of the collateral (Administrative order 1973-3).

Appeal from St. Joseph, Robert E. A. Boyle, J. Submitted Division 3 April 5, 1974, at Grand Rapids. (Docket No. 18890.) Decided July 25, 1974.

Complaint by Detroit & Northern Savings & Loan Association against Richard E. Woodworth, Sr., and Dorothy Woodworth to repossess a mobile home sold under an installment sales contract. After a show-cause hearing judgment was entered for plaintiff. Defendants appeal. Reversed and remanded for further proceedings.

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 20 Am Jur 2d, Courts § 183 *et seq.*

*Parmenter, Forsythe & Rude* (by *Eric J. Fauri*), for plaintiff.

Richard E. Woodworth, Sr., *in propria persona.*

Before: ALLEN, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

ALLEN, P. J. On July 24, 1972, defendants purchased from Gray Mobile Home Sales, Inc., of Muskegon, Michigan, a new 1972 Statesman mobile home for $12,669.12, paying $3,031.12 down with the balance due in 120 monthly installments of $167.82 each. Purchase was by a retail sales contract and security agreement which, on the same day, were assigned to plaintiff. Defendants located the unit at Mendon, Michigan, living in it with their six children.

When defendants fell eight installments behind on the monthly payments, plaintiff filed a complaint praying for an order directing defendants to show cause why an order for claim and delivery should not issue. The order to show cause was issued, and on November 26, 1973 a hearing was held thereon. At the hearing, plaintiff introduced in evidence the installment sales contract and security agreement, evidence that defendants had made no payments since February 5, 1973, and evidence indicating defendants were badly abusing the security. Defendant Richard Woodworth, Sr., appearing *in propria persona,* denied abusing the mobile unit and admitted he was in arrears. When defendant Richard Woodworth sought to explain the arrearage by claiming a breach of warranty and that plaintiff was not a holder in due course,

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the trial court disallowed such testimony. The trial court explained that in the show cause hearing the only questions to be considered were 1) whether there was a contract, 2) whether there was a default, and 3) whether there was impairment of the collateral. The court explained that the defense sought to be raised by Richard Woodworth, Sr., would be raised subsequently in a trial on the merits. At the conclusion of the show cause hearing, the trial court ruled that plaintiff was entitled to take possession of the trailer and gave defendants 20 days to vacate.

The present appeal squarely presents the issue of the extent to which a judge at a show cause hearing to determine possession of collateral under administrative order 1973-3, 389 Mich xliv, must consider various meritorious defenses of the underlying debt as defenses to repossession. Administrative order 1973-3 was issued by the Michigan Supreme Court February 2, 1973 in response to the decision in *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), which declared unconstitutional replevin statutes allowing seizure of property without a prior hearing, including the opportunity for the possessor of the property to be heard on the right to continued possession.[1] The rationale of *Fuentes* has been followed by this Court. *Inter City Motor Sales v Judge of the Common Pleas Court,* 42 Mich App 112; 201 NW2d 378 (1972); *Gates Radio Co v WJAN, Inc,* 50 Mich App 453, 457–458; 213 NW2d 583 (1973). Unfortunately, neither *Fuentes* nor the two Michigan decisions have defined the scope of the show cause hearing mandated under administrative order 1973-3. Legal scholars disagree on the scope of the

[1] Honigman & Hawkins, Michigan Court Rules Annotated, 1974 Supp, p 17.

preliminary hearing required under *Fuentes.*[2] Further complicating the problem is the recent decision by the United States Supreme Court in *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), which effectively overruled *Fuentes.* In a 5–4 opinion, Mr. Justice White, speaking for the majority, held that the issues involved in the possessory action in Louisiana sequestration procedures were narrow and were limited to the following: 1) debtor's default, 2) existence of the creditor's lien, and 3) the possession of the debtor. Mitchell's argument that he was entitled to possession until all of the issues were judicially determined after the full adversary proceeding was rejected. Conceivably, *Mitchell* will lead to a modification of administrative order 1973-3. Possibly *Mitchell* may be distinguished from the present case on the ground that seizure of a home as distinguished from seizure of household goods will place defendants in a "brutal need" situation.[3] But until administrative order 1973-3 is changed or modified by the Supreme Court this Court is bound thereby and must interpret it to the best of this Court's ability. Paragraph 7 of said order provides as follows:

[2] Hayes, *Civil Procedure,* 19 Wayne L Rev 353, 371 (1973); Martin, *Secured Transactions,* 19 Wayne L Rev 593, 635 (1973); Martin, *Commercial Transactions,* 20 Wayne L Rev 305 (1974); Clark & Landers, *Sniadach, Fuentes & Beyond: The Creditor Meets the Constitution,* 59 Va L Rev 355, 407 (1973).

[3] *See* Mr. Justice Powell's concurring opinion in *Mitchell* where he said "Against this concern must be balanced the debtor's real interest in uninterrupted possession of the goods, especially if the sequestration proves to be unjustified. To be sure, repossession of certain items of personal property, even for a brief period, may cause significant inconvenience. But it can hardly be said that temporary deprivation of such property would necessarily place a debtor in a 'brutal need' situation. *Goldberg v Kelly,* [397 US 254, 263–266; 90 S Ct 1011, 1018–1020; 25 L Ed 2d 287, 296–298 (1970)]; *Arnett v Kennedy,* [416 US 134; 94 S Ct 1633; 40 L Ed 2d 15 (1974)]." 416 US 625; 94 S Ct 1909; 40 L Ed 2d 424.

".7 *Hearing on Order to Show Cause.* If the defendant appears in response to the order to show cause the court shall thereupon hear the same as a motion. If the court determines that the defendant *has no meritorious defense* to the action the court is empowered to enter an order for delivery of any or all of the property claimed in the complaint to the plaintiff in conformity with GCR 1963, 752.2–757.8. If the court determines that *there may be a* meritorious defense to the action the case shall thereupon be set for trial in conformity with the rules of the court in which the action is pending." (Emphasis supplied.)

At 5 Honigman & Hawkins, Michigan Court Rules Annotated, 1974 Supp, p 17, the authors discuss the new administrative order and the *Fuentes* decision. Noting that the Arizona Supreme Court refused to follow *Fuentes* on the ground that the addition of Justices Powell and Rehnquist would lead to *Fuentes* being overruled (a correct forecast), they said:

"Even if the *Fuentes* decision is as tenuous as the Arizona court thinks—and it may be—the new Michigan procedure will remain a valid exercise of the rule-making power since a *Fuentes* overruling would hardly *forbid* the extra hearing now required in Michigan. (Emphasis in original.)

\* \* \*

"Since the time allowed to the defendant is rather short, he should not be required to marshall all of the evidence he would present at a plenary hearing of the case; any substantial indication on his part that he has evidence to show—for example, that he has not defaulted in payments on the property in question, *or that the property was defective, contrary to a warranty, and he has exercised his statutory right under UCC 2-717—* should constitute an acceptable showing that there 'may be' a meritorious defense." (Emphasis supplied.) 5 Honigman & Hawkins, Michigan Court Rules Annotated, 1974 Supp, p 19.

A reading of the transcript reveals that this is precisely what defendant was trying to do at the hearing. He asserted that there were defects or a breach on the part of the seller, namely, some furniture had not been delivered and that the family had no place to store its clothing. He indicated that he and his wife had to do a lot of "warranty work" and has indicated in his brief that the "floor joists" were insufficient. He asserted that his reasons for not paying his monthly payments went "to the merits of the case" and that he could not be in arrears "if the warranty was breached". He stated that he contacted plaintiff in September, shortly after delivery of the trailer, in October–December of 1972, and in January–February 1973. It seems that defendant was trying to indicate the property was defective, that seller had breached the warranty, and that he (defendant) had in fact tried to comply with section 2-717 of the Uniform Commercial Code which provides:

"The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." MCLA 440.2717; MSA 19.2717.

The "official uniform commercial code comment" attached to that section indicates that while the buyer may withhold all or part of the price pursuant to a breach on the seller's part,

"[t]he buyer, however, must give notice of his intention to withhold all or part of the price if he wishes to avoid a default within the meaning of the section on insecurity and right to assurances. In conformity with the general policies of this article, no formality of notice is required and any language which reasonably

indicates the buyer's reason for holding up his payment is sufficient."

In our opinion, the clear wording of administrative order 1973-3 allows a defendant to introduce evidence of a meritorious defense including the defense of breach of warranty. Admittedly, the administrative order goes considerably further in protecting a defendant than the requirements of *Fuentes* or its enfeebled offshoot, *Mitchell.* Admittedly, the administrative order contains no standard by which a trial court is to determine "there may be a meritorious defense to the action". But the fact remains that in the instant case, defendants were not permitted to fully present the defenses the administrative order allows. The trial court mistakenly foreclosed inquiry which the administrative order permits.

Accordingly, the order of the trial court is set aside and the case remanded for a show cause hearing at which defendants will be permitted to introduce testimony of meritorious defenses. At the conclusion of such hearing the court may still determine that defendants have failed to show they may have a meritorious defense and enter an order for delivery of the mobile home unit, or may determine there may be a meritorious defense and set the case for trial.

Reversed and remanded for proceedings in accordance with this opinion. Costs to defendants.

All concurred.