**PUROFIED DOWN PRODUCTS CORPORATION, a New York Corporation, Plaintiff,**

v.

**ROYAL DOWN PRODUCTS, INC., a Michigan Corporation, Defendant.**

No. G77–312 CA1.

United States District Court, W. D. Michigan, S. D.

Aug. 21, 1980.

Asher Rabinowitz, Detroit, Mich., Alan R. Smith, Grand Rapids, Mich., for plaintiff.

Peter L. Gustafson, Grand Rapids, Mich., for defendant.

## OPINION AND ORDER

DOUGLAS W. HILLMAN, District Judge.

Plaintiff, a New York supplier of processed goose down and feathers, brings suit against defendant, a Michigan manufacturer of down–filled products, for recovery of the contract price of goose down and feathers shipped by plaintiff to defendant in 1976 and 1977. Defendant has counterclaimed for damages alleged to have resulted from defects in the material shipped by plaintiff.

Plaintiff moves for summary judgment of its claim under Rule 56 of the Federal Rules of Civil Procedure,[1] alleging that it is

---

1. Rule 56 of the Federal Rules of Civil Procedure reads in part as follows:

 **(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary

entitled to judgment as a matter of law in that defendant has admitted taking delivery of the down, not revoking acceptance, and not seeking to rescind the contract. Defendant opposes summary judgment, arguing that failure to pay the contract price, under the circumstances of this case, does not amount to a breach of contract. At issue is the applicability of Section 2–717 of the Uniform Commercial Code (M.C.L.A. § 440.2717; M.S.A. § 19.2717).[2]

Plaintiff also moves for protective order, designed to prevent defendant from deposing one of its own witnesses by way of interrogatories. For the reasons that follow, I deny both of plaintiff's motions.

## I. FACTS

Plaintiff and defendant commenced business in early 1976, resulting in defendant's initial order for duck and goose down in June. Deliveries of down were thereafter accepted and paid for throughout that year. Additional orders were also placed by defendant in November, 1976, and January, 1977, with delivery to be completed by mid–1977.

In February, 1977, defendant concluded that, in its opinion, shipments of feather materials delivered by plaintiff failed to meet contract specifications. As a result, representatives of the parties met throughout March and early April in an attempt to resolve the dispute. On April 5, 1977, defendant's president formally notified plaintiff that the down shipped by plaintiff was defective and unmerchantable. In writing, defendant advised that it would hold plaintiff responsible for all damages flowing from the alleged breach. Defendant further advised that it was withholding payment due under the contract as a set–off, pending cure.

Plaintiff responded by proposing that defendant return the allegedly defective merchandise for reworking. The reprocessed goods were to be invoiced on a net 60 day basis at the original contract price. Defendant agreed.

Plaintiff shipped defendant an initial 5,000 pounds of replacement goods on April 6, 1977. Defendant thereafter shipped plaintiff 10,000 pounds of feather material, and received in return 5,000 pounds of reprocessed down on April 28, 1977. Defendant shipped back to plaintiff another 5,000 pounds of purportedly substandard down on April 28, 1977.

Upon receipt of the replacement, reprocessed feather material, defendant determined, upon inspection, that this down allegedly also failed to conform to contract specifications. Defendant notified plaintiff in writing, on April 11, and by telephone in April and early May, that the replacement material was unacceptable. At this point, plaintiff refused to return 5,000 pounds of down material awaiting reprocessing, and apparently repudiated its obligation to deliver 10,000 pounds remaining due under the agreement. On May 9, 1977, defendant's president again wrote to plaintiff advising that defendant would hold plaintiff liable for damages resulting from plaintiff's alleged breach. Plaintiff's attorney answered by telegram on May 19, 1977, threatening litigation.

judgment in his favor upon all or any part thereof.

\* \* \* \* \* \*

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**2.** M.C.L.A. § 440.2717 reads as follows:

"Sec. 2717. The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

The parties attempted to resolve the conflict, but negotiations failed. Meanwhile, time for payment passed with defendant refusing to pay for any of the material previously shipped. In the interim, defendant removed the allegedly defective down from the original packing containers, placed some of this material in a bonded warehouse, pledging it as collateral for business loans, and utilized the remainder in manufacturing down-filled products. Based upon defendant's refusal to pay for or return the down, plaintiff thereafter initiated suit in this court on June 24, 1977. Jurisdiction is based upon diversity of citizenship, with the matter in controversy exceeding $10,000.00. 28 U.S.C. § 1332. A jury trial has been demanded.

Plaintiff moved for summary judgment on November 4, 1977, arguing that defendant's acceptance of the goods, and its failure to pay, entitled plaintiff to judgment of the contract price as a matter of law. Plaintiff maintains that summary judgment in its favor will not act to prejudice defendant's counterclaim, but will simplify trial of the case.

Defendant opposes summary judgment, asserting that it has not breached the contract. While defendant admits having accepted the feather material in question, defendant nevertheless maintains that under M.C.L.A. § 400.2717 (U.C.C. § 2–717), it was permitted to offset its damages incurred as a result of plaintiff's alleged breach from the amounts due to plaintiff under the contract. For the reasons that follow, I hold that utilization of M.C.L.A. § 400.2717 bars granting summary judgment in the present case. Accordingly, I deny plaintiff's motion.

## II. MOTION FOR SUMMARY JUDGMENT

In support of its motion, plaintiff relies on M.C.L.A. § 440.2607, M.S.A. § 19.2607 (U.C.C. § 2–607), which reads in part:

Sec. 2607. (1) The buyer must pay at the contract rate for any goods accepted.

(2) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this article for nonconformity.

(3) Where a tender has been accepted

(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;

\* \* \* \* \* \*

(4) The burden is on the buyer to establish any breach with respect to the goods accepted.

(5) Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over

(a) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the 2 litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound

Plaintiff argues that because defendant has accepted the goods, it is now liable for the remaining contract price.

However, plaintiff overlooks M.C.L.A. § 440.2717 (U.C.C. § 2–717), which reads:

"Sec. 2717. The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

That section authorizes the buyer to deduct damages from the purchase price, so long as the buyer notifies the seller of its intent to deduct damages, and provided that the buyer only deducts from the purchase price due on a contract such damages as arise under the same contract. See, 2 Anderson, *Uniform Commercial Code* § 2–717:3, 4, p. 490, 491 (1971).

A situation similar to the present one arose recently in the case *Created Gemstones, Inc. v. Union Carbide Corp.*, 44 N.Y.2d 847, 406 N.Y.S.2d 760, 378 N.E.2d 123 (1979). There, defendant, manufacturer of synthetic gemstones, unilaterally limited the line of credit available to plaintiff, distributor of defendant's product. When plaintiff thereafter placed purchase orders for defendant's synthetic gems, defendant refused to deliver unless plaintiff pre–paid. Plaintiff then brought suit for breach of contract. Defendant counterclaimed for amounts then due under the contract because of previous shipments, and moved for summary judgment.

The trial court granted defendant's motion for summary judgment on its counterclaim on the grounds that plaintiff's liability for the goods received was clearly established. On appeal, this ruling was reversed. The court held that Section 2–717 of the U.C.C. operated to extinguish a purchaser's liability for goods sold and delivered where the purchaser offsets damages it has incurred by virtue of the seller's breach. Consequently, the court held, summary judgment may not be granted on a seller's counterclaim for goods sold where there are unresolved factual issues in the buyer's action for damages concerning whether the seller breached the underlying contract of sale. *See also, American Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 460 (S.D.N.Y.1976); *Hussey Metals Div. v. Lectromelt Furnace Div.*, 417 F.Supp. 964 (W.D.Pa.1976), aff'd, 556 F.2d 566 (3rd Cir. 1977); *Jurek v. Thompson*, 308 Minn. 191, 241 N.W.2d 788 (Minn.1976).

The Michigan Court of Appeals similarly has ruled that setoff pursuant to M.C.L.A. § 440.2717 precludes summary judgment on the seller's behalf for the purchase price due under a commercial contract. *Detroit & Northern Savings & L. Ass'n. v. Woodworth*, 54 Mich.App. 517, 221 N.W.2d 190 (1974). There, defendants fell behind on monthly payments due on an installment contract for a mobile home. Plaintiff, purchaser of the retail sales contract and secur-ity agreement entered into by defendants, then brought suit praying for an order directing defendants to show cause why an order for claim and delivery should not issue.

At the show cause hearing, defendants sought to explain their arrearage demonstrating breach of warranty. The trial court disallowed this testimony, holding that the only matters in issue were whether there was a contract, and whether defendants defaulted.[3] The court thereupon ruled that plaintiff was entitled to possession, and gave defendant twenty days to vacate.

A unanimous Court of Appeals reversed. The court ruled that, under state law, in show cause hearings of the type involved in the court below, defendants must be given an opportunity to present meritorious defenses, and that the lower court was, therefore, mistaken in excluding defendants' testimony involving plaintiff's alleged breach of warranty. Included among the defenses available to defendants is refusal to pay pursuant to a set–off authorized under M.C.L.A. § 400.2717. In reaching this conclusion, the court cited with approval 5 Honigman & Hawkins, *Michigan Court Rules Annotated*, 1974 Supp. p. 19, which reads in part:

"Since the time allowed to the defendant is rather short, he should not be required to marshall all of the evidence he would present at a plenary hearing of the case; any substantial indication on his part that he has evidence to show–for example, that he has not defaulted in payments on the property in question, *or that the property was defective, contrary to a warranty, and he has exercised his statutory right under UCC 2–717* –should constitute an acceptable showing that there 'may be' a meritorious defense." (Emphasis supplied.)

The court then stated, at 192–193:

A reading of the transcript reveals that this is precisely what defendant was trying to do at the hearing. He asserted that there were defects or a breach on the part of the seller, namely, some furni-

---

**3.** A third issue, whether defendant had damaged the collateral, was also involved, and testimony relating to that factual issue was admitted.

ture had not been delivered and that the family had no place to store its clothing. He indicated that he and his wife had to do a lot of "warranty work" and has indicated in his brief that the "floor joists" were insufficient. He asserted that his reasons for not paying his monthly payments went "to the merits of the case" and that he could not be in arrears "if the warranty was breached". He stated that he contacted plaintiff in September, shortly after delivery of the trailer, in October–December of 1972, and in January–February 1973. It seems that defendant was trying to indicate the property was defective, that seller had breached the warranty, and that he (defendant) had in fact tried to comply with section 2–717 of the Uniform Commercial Code which provides:

"The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." M.C.L.A. § 440.2717; M.S.A. § 19.2717.

The "official uniform commercial code comment" attached to that section indicates that while the buyer may withhold all or part of the price pursuant to a breach on the seller's part,

"[t]he buyer, however, must give notice of his intention to withhold all or part of the price if he wishes to avoid a default within the meaning of the section on insecurity and right to assurances. In conformity with the general policies of this Article, no formality of notice is required and any language which reasonably indicates the buyer's reason for holding up his payment is sufficient."

In our opinion, the clear wording of administrative order 1973–3 allows a defendant to introduce evidence of a meritorious defense including the defense of breach of warranty.

 This interpretation of M.C.L.A. § 440.2717, as well as other courts' interpretations of U.C.C. § 2–717 generally, convince me that plaintiff's summary judgment motion should be denied. Whether plaintiff breached, and therefore, whether defendant has a right to set–off under M.C. L.A. § 440.2717, is a factual question which cannot be decided at this point in the litigation. Clearly, if defendant properly employed set–off available under M.C.L.A. § 440.2717, then defendant cannot be said to have breached the contract, and plaintiff cannot recover the purchase price allegedly due. Acceptance of seller's product, and refusal to pay, alone do not necessarily constitute breach.

Consequently, for the reasons set out above, plaintiff's motion for summary judgment is denied.[4]

### III. MOTION FOR PROTECTIVE ORDER

Plaintiff has additionally moved for a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure.[5]

Defendant has informed plaintiff that defendant will rely on testing reports of independent agencies to prove, in its counterclaim, that plaintiff's down material was unmerchantable. Recently, defendant ap-

---

4. Defendant alleges that it meets the prerequisites for relying on M.C.L.A. § 440.2717 in that plaintiff was informed of defendant's intents and in that defendant's setoff involved an alleged breach of the same contract for which money was owing. Whether or not Section 2717 in fact was available to defendant, and whether defendant properly relied on it, are questions not raised by movant and which this court therefore need not reach in disposing of plaintiff's motion.

5. Rule 26 of the Federal Rules of Civil Procedure reads in part as follows:

(a) **Discovery Methods.** Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under subdivision (c) of this rule, the frequency of use of these methods is not limited.

\* \* \* \* \* \*

(c) **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the

parently informed plaintiff that defendant intended to depose by interrogatories three testing agencies which previously examined plaintiff's feather material. Plaintiff now seeks a protective order precluding deposition by interrogatories because, it argues, at trial, defendant will attempt to offer the interrogatory answers as substantive evidence pursuant to F.R.E. 804(b)(1), even though plaintiff has not had an opportunity to cross–examine. While plaintiff does not object to oral deposition of defendant's witnesses, plaintiff argues that use of interrogatories is inferior and not designed for employment in complex cases, and that defendant is merely attempting to preclude plaintiff from pursuing discovery in the way plaintiff wishes.

■ While deposition by interrogatories may be inferior in certain circumstances (*see,* 8 Wright & Miller, *Federal Practice and Procedure,* § 2039 at pp. 281–282 (1970)), generally the party seeking discovery is entitled to pursue it by way of the method of its choice. *Id.* The parties defendant seeks to depose by interrogatories are located in either California or Washington. Therefore, deposition by interrogatories would be a less expensive means of obtaining information necessary for trial preparation. I am not convinced that, as plaintiff asserts, defendant is abusing the discovery rules in an attempt to gain an unfair advantage at trial.

■ Moreover, plaintiff is not precluded from noticing oral depositions of the same parties defendant seeks to depose by interrogatories. Under Rule 26, various discovery devices can be used in combination, and in any order. *See,* 4A Moore & Lucas, *Moore's Federal Practice,* ¶ 33.09, p. 33–64 (1980). Therefore, the fact that defendant chose one method of discovery does not usurp plaintiff's right to choose an alternative method. Plaintiff's delay in seeking to depose witnesses cannot be used to deny defendant ' the right to seek discovery through its method of choice.

Consequently, for the reasons set out above, I deny plaintiff's motion for protective order.

· IT IS SO ORDERED.

court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.