**RPJ SPORTSWEAR, INC. d/b/a Topnotch, Plaintiff,**

v.

**XYLO TEX, LTD., Defendant.**

**No. 84 Civ. 7512 (MBM).**

United States District Court, S.D. New York.

March 24, 1988.

---

show cause why the District Attorney had not delivered certain *Rosario* material in connection with the § 440.10 motion.

Berman, Fichtner & Mictchell, Dallas, Tex., and Vann & Borenstein, New York City, for plaintiff.

Scheffler, Karlinsky & Stein, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

### I.

Plaintiff, RPJ Sportswear, Inc., d/b/a Topnotch ("RPJ"), a Texas corporation that manufactures women's clothing in large sizes, brought this action against Xylo Tex, Ltd. ("Xylo Tex"), a North Carolina fabric supplier, in April 1984, in the United States District Court for the Northern District of Texas, Dallas Division. Briefly, RPJ al-

leged that Xylo Tex had provided other manufacturers with the same goods and patterns it supplied to RPJ, in breach of an alleged agreement that certain goods and patterns were to be provided exclusively to RPJ. By memorandum opinion and order dated September 26, 1984, Judge Barefoot Sanders of that Court granted Xylo Tex's motion to dismiss for lack of personal jurisdiction and also transferred the case to this court pursuant to 28 U.S.C. § 1404(a).[1] Thereafter, Xylo Tex counterclaimed for the unpaid invoices relating to the goods in question. Presently before the court is defendant's motion for partial summary judgment on its counterclaim in the amount of $168,222.78 plus interest. For the reasons set forth below that motion is denied.

Plaintiff alleges that during November and December 1983, RPJ and Xylo Tex negotiated and entered into contracts whereby Xylo Tex agreed to sell to RPJ certain fabrics with the understanding that the goods and patterns would be sold exclusively to RPJ for the manufacture of large size garments. Specifically, Xylo Tex was allegedly prohibited from using or selling to other manufacturers of large size clothing either the fabrics themselves, the patterns, or any combination of the two.

The parties seem to agree that between January 16, 1984 and March 14, 1984, Xylo Tex delivered the goods to RPJ pursuant to separate contracts of sale and billed RPJ for the purchase price. In April 1984, RPJ advised Xylo Tex that it would not pay the outstanding amount, $168,222.78, because it had learned of Xylo Tex's alleged sale of identical goods to RPJ's competitors, in breach of the exclusivity agreements. RPJ purported to revoke its prior acceptance as to all the goods delivered, and returned to Xylo Tex all of the remaining goods in its possession, including some 2,223 completed blouses made from the fabric Xylo Tex had sold to RPJ. Xylo Tex refused to accept the revocation and maintained that any exclusivity agreements were solely with respect to particular combinations of fabric,

1. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

style and color, which agreements were not breached. The rejected merchandise has remained in RPJ's warehouse in Texas since the action began. Xylo Tex has moved for summary judgment in the amount of its unpaid invoices.

## II.

Although the question of choice of law is not in dispute a brief discussion is in order. Ordinarily, a federal court sitting in a diversity case must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, when a case has been transferred for the convenience of the parties, a transferee judge must apply the choice of law rules of the state where the transferor court sat. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). But this exception applies only if the action could have been maintained in the original forum. *Davis v. Costa-Gavras,* 580 F.Supp. 1082 (S.D.N.Y. 1984). Specifically, it does not govern cases in which the transferor court lacked personal jurisdiction over the defendant. *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 991–93 (11th Cir.1982); *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1110 (5th Cir.1981); *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 164–65 (3d Cir.1980), *rev'd on other grounds,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Here, the transferor court dismissed the action for lack of personal jurisdiction and then transferred it to this court. Therefore, the action could not have been maintained in Texas and New York choice of law rules apply.

New York courts apply a "paramount interest" test to determine choice of law. *Hutner v. Greene,* 734 F.2d 896 (2d Cir. 1984). In *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969) the New York Court of Appeals wrote that "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* at 382, 300 N.Y.S.2d 817, 248 N.E.2d 576 (*quoting, Miller v. Miller,* 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968)). Applying that test to the present case, it is not clear based on the record before the court whether New York or Texas has the greater interest in the outcome of this litigation. It is undisputed that the cause of action arose out of contracts negotiated and entered into in New York by New York representatives of both parties and that both parties have sales offices in New York. On the other hand, the goods were to be accepted or rejected in Texas and remain there at the present time. However, further inquiry into the nature of each state's contacts is not necessary as the ultimate result would be the same. Both New York and Texas have adopted the relevant sections of the Uniform Commercial Code, the statute to be applied in this case. *Compare* Tex. [Bus. & Co.] Code Ann. § 2.717 (Vernon 1968) *with* N.Y. [U.C.C.] Law § 2–717 (McKinney 1964). *See also,* State Correlation Tables, U.C.C. Rep.Serv. (Callaghan) (December 1986). Furthermore, a search of the relevant U.C.C. sections showed no disparity in interpretation between the New York and Texas courts.

## III.

The essence of Xylo Tex's claim is that because RPJ has admitted that (i) it received and accepted all the goods reflected on the invoices and purchase orders in question, (ii) all of the goods as to which payment is sought physically conformed to the purchase orders, and (iii) substantially all of the goods were actually cut or converted into finished garments, Xylo Tex is entitled to payment of the purchase price as a matter of law. Although Xylo Tex cites no authority for its reasoning, I assume reliance on U.C.C. § 2–709 which provides a seller with a cause of action for the price of accepted goods.

RPJ argues that once it became aware of Xylo Tex's breach of the exclusivity agreements the goods became "nonconforming" and RPJ was entitled to revoke its accept-

ance pursuant to U.C.C. § 2–608. That section is set out in the margin.[2]

In response, Xylo Tex contends that RPJ's admitted conversion of substantially all of the goods in question into finished garments and the sale to its customers of such garments was a "substantial change" in the goods and precludes any possible revocation of RPJ's acceptance of such goods pursuant to U.C.C. § 2–608(2), which requires notice of revocation "before any substantial change in condition of the goods...."

 Xylo Tex suggests that RPJ must rely on U.C.C. § 2–608 to defeat this summary judgment motion, and that because there has been "substantial change in condition of the goods" RPJ is defenseless against the motion. That is simply incorrect. The issue of whether RPJ properly revoked its acceptance of the goods, while interesting, need not be reached because another U.C.C. provision is dispositive. The relevant U.C.C. section is 2–717, which permits a buyer to set off his damages against the outstanding balance of the purchase price. That section provides:

> The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

Here, RPJ advised Xylo Tex in April 1984 that it would not pay the outstanding amount of the purchase price for the goods it had bought from Xylo Tex because it had learned of an alleged breach of the exclusivity contract.[3] That alleged breach is the subject of RPJ's complaint. When a coun-

terclaim is "inextricably interwoven" with the underlying cause of action summary judgment cannot be granted. *Created Gemstones, Inc. v. Union Carbide Corp.,* 47 N.Y.2d 250, 254, 417 N.Y.S.2d 905, 391 N.E.2d 987 (1979); *GTE Automatic Electric, Inc. v. Martin's, Inc.,* 127 A.D.2d 545, 547, 512 N.Y.S.2d 107 (1st Dept.1987).

In *Created Gemstones, Inc. v. Union Carbide Corp., supra,* 47 N.Y.2d at 250, 417 N.Y.S.2d 905, 391 N.E.2d 987, a breach of contract action was instituted against the seller of synthetic gems and the seller counterclaimed for the purchase price owed for goods sold and delivered. Reversing a decision granting summary judgment to the seller on its counterclaim, the New York Court of Appeals relied on U.C.C. § 2–717 to hold that "summary judgment may not be granted on a seller's counterclaim for goods sold and delivered where there are unresolved factual issues, in the buyer's action for damages, concerning whether the seller breached the underlying contract of sale." *Id.* at 252–53, 417 N.Y.S. 2d 905, 391 N.E.2d 987. *See also, American Electric Power Co. v. Westinghouse Electric Corp.,* 418 F.Supp. 435, 460 (S.D. N.Y.1976) ("It is axiomatic that a seller cannot recover what is due him under a contract until his performance under the contract has been demonstrated...."); *Purofied Down Products Corp. v. Royal Down Products, Inc.,* 87 F.R.D. 685 (W.D. Mich.1980). Xylo Tex itself admits, while arguing that its counterclaim and the underlying contract claim should be severed, that RPJ's breach of contract claim is "replete with genuine unresolved factual issues."

---

**2.** Revocation of Acceptance

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

 (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

 (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and

before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he rejected them.

**3.** RPJ has satisfied the notice requirement under the statute. The Official Comment to U.C.C. § 2–717 states that "no formality of notice is required and any language which reasonably indicates the buyer's reasons for holding up his payment is sufficient."

Because RPJ has a pending action for damages for the alleged breach of the underlying contract of sale, and Xylo Tex's right to recover on its counterclaim depends upon a determination at trial as to whether Xylo Tex breached that contract, Xylo Tex is not entitled to summary judgment. Accordingly, defendant's motion for summary judgment on its counterclaim is denied.