**PACIFIC WESTERN RESIN COMPANY, a Washington corporation, Plaintiff,**

v.

**CONDUX PIPE SYSTEMS, INC., a Minnesota corporation, Defendant.**

**Civ. No. 91–6097–JO.**

United States District Court, D. Oregon.

Aug. 1, 1991.

Larry S. Gangnes, Craig D. Bachman, David A. Miller, Lane Powell Spears Lubersky, Portland, Or., for plaintiff.

**314**

Jerome B. Pederson, Barnes H. Ellis, Joel A. Mullin, Stoel Rives Boley Jones & Grey, Portland, Or., for defendant.

## ORDER

ROBERT E. JONES, District Judge:

Pacific Western Resin Company ("PW Resin") brings this breach of contract action against Condux Pipe Systems, Inc. ("Condux"). The court has jurisdiction because of the diversity of the citizenship of the parties and the amount in controversy. 28 U.S.C. § 1332.

PW Resin moves for summary judgment under Fed.R.Civ.P. 56 and moves for entry of final judgment under Fed.R.Civ.P. 54(b).[1]

A motion for summary judgment places a burden on both parties. The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Genuine issues remain for trial when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

From August through November of 1990, Condux ordered and received more than 24 million pounds of resin from PW Resin. Condux paid for 18 million pounds of the resin. PW Resin sues for the invoiced amount due on the remaining 6 million pounds of resin plus interest, damages in excess of two million dollars, contending that the invoices contained all the terms of the contract between PW Resin and Condux.

Although Condux admits that Condux received 24 million pounds of resin, paying for only 18 million pounds, Condux denies that the invoices contained all the terms of the contract between the parties. Condux asserts the following defenses: 1) fraudulent inducement; 2) estoppel; 3) failure of consideration; 4) set-off; and 5) failure to mitigate. Condux also asserts three counterclaims: 1) breach of contract; 2) promissory estoppel; and 3) fraud.

The basis of Condux's counterclaims arise out of negotiations conducted by Mr. Radichel of Condux and Mr. Rash of PW Resin. In late 1989 and early 1990, Rash and Radichel discussed the possibility of PW Pipe purchasing Condux. The discussions terminated because Rash was engaged in another transaction, namely PW Pipe bought what is known as PW Resin.

In late July of 1990, Rash contacted Radichel and proposed that Condux buy its resin requirements from PW Resin. The price formula that Rash quoted was 15% below an industry price indicator known as the "CDI index." This price was more favorable than the price Condux was paying its existing suppliers.

Although the price was more favorable, Condux was concerned about injury resulting to Condux as a result of it switching from its existing suppliers. Radichel told Rash that Condux needed long term security if Condux was to cut off its existing resin sources.

---

1. Fed.R.Civ.P. 54(b) provides that

   [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

   *See Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

   PW Resin makes this motion because of fears of Condux's imminent insolvency and because of beliefs of Condux's purchase by a third party. Because of the court's disposition, however, the court does not reach this issue.

PW Resin sent Condux a contract on August 7, 1990, which committed PW Resin to sell at the CDI price for an initial one year term, subject to either party's right to terminate with six months' written notice. Although Condux was not satisfied with the terms of the contract, the parties commenced performance under the contract.

On September 14, 1990, Condux sent PW Resin a proposal for revised terms: a five year term among others. The September 14 contract did not change the CDI price.

After more negotiations, Condux submitted proposed changes on October 9, 1990. PW Resin subsequently submitted proposed changes on October 12, 1990, which included the five year term, but permitted either party to terminate the contract on six months' notice.

On October 19, 1990, Radichel agreed to modify the six months' notice clause. Either party would still be allowed to terminate the contract on six months' advance written notice, but the other party would be allowed to extend the agreement for an additional six months if resin is in short supply and is unavailable from another source.

At the end of October of 1990, PW Resin informed Condux that it would no longer be able to sell resin at the CDI price because another customer might be able to assert a price discrimination claim against PW Resin. This was the first time that Condux was aware that PW Resin was selling resin to other pipe customers. After informing Condux that it would no longer be able to sell resin at the CDI price, PW Resin renewed its interest in purchasing Condux, but only the Florida plant. Condux also has Minnesota and Connecticut plants.

Condux submits that it has not been able to purchase substitute resin at a price equivalent to the CDI price. Further, Condux submits that it was forced to shut down its manufacturing operations after it ran out of resin. Condux asserts that its value has been substantially reduced and that it continues to suffer damages.

On February 1, 1991, Condux put PW Resin on notice of its intent to exercise set-off rights against PW Resin's claim for resin delivered to Condux.

PW Resin's memorandum in support of its motion for summary judgment is direct: Condux ordered and received six million pounds of resin for which it has refused to pay the invoiced price.

PW Resin also seeks interest on the amount due on the invoices. The invoices provide for payment of a service charge of one and one-half percent interest per month on amounts thirty days past due.

PW Resin argues that because Condux "accepted" the resin, within the meaning of ORS 72.6060, Condux must pay the "contract rate." ORS 72.6070(1). PW Resin proffers the "contract rate" as the rate specified within the invoices.[2]

Condux does not appear to contest the price as specified in the invoices, the CDI price.[3] Rather, Condux refuses to pay the

2. PW Resin erroneously claims that ORS 72.-2010(2) mandates that the terms of the contract between PW Resin and Condux conform to the terms of the invoices. ORS 72.2010 merely address the issue of the statute of frauds, not the issue of the terms of the contract. "[A] complying memo [for statute of frauds purposes] is not equivalent to victory.... [T]he theory is that a complying memo itself is not conclusive proof of the existence of the oral contract, let alone of its terms." White & Summers, *Uniform Commercial Code*, § 2–3 (3rd ed. 1988) (footnotes omitted); *see Perdue Farms, Inc. v. Motts, Inc.*, 459 F.Supp. 7, 14 (N.D.Miss.1978) ("A confirmatory writing to which no timely written notice of objection has been given, only prevents the merchant, who failed to timely give notice of objection, from invoking the statute of frauds as a defense."); *General Matters, Inc. v. Penny Prod., Inc.*, 651 F.2d 1017, 1020 (5th Cir.1981) ("[T]he terms of a unilateral confirmatory writing that satisfies the statute of frauds are not conclusive evidence of the terms of an agreement.").

3. Condux, however, does state "[t]he only function of submitting purchase orders with release dates and receiving invoices was to maintain transactional records of quantities and shipments because the terms and conditions of the business relationship were to be determined by the resin supply contract that was being negotiated and was in fact negotiated." Opponent's Concise Statement, p. 5. Further, Radichel's affidavit states "[a]t no time did I or anyone at Condux agree to be bound by any terms in PW

# 316

invoiced price, the CDI price, because Condux claims that the amount due should be set-off from the damages due to Condux as a result of PW Resin's breach.

Condux's position is as follows:

Condux has come forward with competent evidence which, if believed by the jury, would establish that the contractual relationship between the parties consisted of a single long-term resin requirements contract at the formula price and that all shipments it received were made pursuant to such contract.

If the jury believes the testimony of Radichel, and finds that there was such a single resin requirements contract, summary judgment would be inappropriate because Condux is entitled to a set-off and PW Resin would not be entitled to any monies unless the jury would also find that the damages Condux sustained by PW Resin's breach of the single resin requirements contract do not exceed the total of the unpaid invoices.

Condux's Memorandum in Opposition, p. 8.

"The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party." *Lindahl v. Air France,* 930 F.2d 1434, 1437 (9th Cir.1991) (citation omitted). Under summary judgment standards, Condux has successfully defeated PW Resin's motion to the extent that the court cannot say as a matter of law that the contract between the parties consisted solely of the invoices. Condux has proffered competent and sufficient evidence of an oral contract.[4]

PW Resin's motion, however, does not end here. The issue now is whether PW Resin is precluded from summary judgment on the money due for the accepted goods because of Condux's counterclaims as a result of PW Resin's alleged breach of the requirements contract; that is, can Condux's set-off claim defeat PW Resin's motion?

Resin's invoices, including the interest rate stated in such invoices."

"The buyer on notifying the seller of the intention of the buyer to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." ORS 72.7170. Condux notified PW Resin.

PW Resin contends that "same contract" in ORS 72.7170 is a term of art.

To be sure, the drafters intended § 2–717 [ORS 72.7170] to broaden the buyer's right to deduct and did not limit that remedy to cases involving breach of warranty ... But ... § 2–717 "is not a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer." ... Damages are deductible only against the price still due under the same contract. Moreover, we believe that in order for a buyer to invoke § 2–717, the asserted breach must go to the essence of the transaction under which the seller seeks to recover his price. Here the breaches asserted by the buyer largely relate to the termination of the distributorship agreement; there is no hint that seller acted improperly in any way regarding the actual sale or delivery of the goods. A buyer should not be able, by asserting a remote breach of contract, to delay payment for goods accepted.

*C.R. Bard, Inc. v. Medical Elec. Corp.,* 529 F.Supp. 1382, 1387 (D.Mass.1982). PW Resin cites other authority for the proposition that the buyer's obligation to pay for accepted goods and the seller's alleged breach of a requirements contract are not the "same contract." *Travenol Laboratories, Inc. v. Zotal, Ltd.,* 394 Mass. 95, 474 N.E.2d 1070, 1073 (1985) ("[T]he buyer's 'obligation to pay for goods tendered and accepted does not arise under the 'same contract' as the alleged breach of an exclusive dealing or distributorship arrangement' by the seller.") citing *Hellendall Distrib., Inc. v. S.B. Thomas, Inc.,* 559

4. The court notes Condux's discussion of the terms of the contract, the statute of frauds, and illegality. Condux's Memorandum in Opposition to PW Resin's Motion, p. 10–17.

F.Supp. 573 (E.D.Penn.1983), *aff'd without opinion,* 755 F.2d 920 (3rd Cir.1985) and *C.R. Bard, supra.*

In *Hellendall,* the court held that Uniform Commercial Code § 2–717 does not provide a right to set off the amount owed under §§ 2–606 and 2–607 because the obligation to pay for goods tendered and accepted does not arise under the "same contract" as the alleged breach of an exclusive dealing or distributorship arrangement by the defendant. *Hellendall,* 559 F.Supp. at 574–75.

PW Resin further cites to *Schieffelin & Co. v. Valley Liquors, Inc.,* 823 F.2d 1064 (7th Cir.1987). In dicta, *Schieffelin* discussed the rule "that a seller be entitled to the price of goods accepted, regardless of the buyer's claim under some remote transaction." *Schieffelin,* 823 F.2d at 1067. The *Schieffelin* court further stated "[a]s to any sale ... the price, type, and quantity of goods sold resulted from accepted purchase orders and not from the distributorship agreement." *Id.* However, the court noted that the buyer failed to give notice of its intent to deduct damages and comply with other state procedural requirements.

Lastly, PW Resin cites to *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 686 F.Supp. 1319 (N.D.Ill.1988). The court stated the principle, set by precedent, that "[a]ny buyer that has accepted goods is obligated to pay the seller the contract price and is relegated to a counterclaim for alleged breaches of warranty." *Quaker Alloy,* 686 F.Supp. at 1344. But the court pointed out that those precedents failed to consider U.C.C. § 2–717.

In *Purofied Down Prod. Corp. v. Royal Down Prod., Inc.,* 87 F.R.D. 685, 688–90 (W.D.Mich.1980), the court held that summary judgment for the seller was not appropriate when the buyer claimed a right of set-off under § 2–717.

*Quaker Alloy* rejected *Purofied* and held summary judgment appropriate for the price of the goods delivered and accepted. The court found an inconsistency between

UCC § 2–717 [which] speaks of a buyer's right to deduct "damages resulting from

any breach of the contract [by the seller] from any part of the price *still due,"* ... [and] *Purofied* [which] ... draws this conclusion:

Acceptance of seller's product, and refusal to pay, alone do not necessarily constitute breach.

*Quaker Alloy,* 686 F.Supp. at 1344. The court, however, found it consistent "that the liquidated amount (the unpaid purchase price) is 'still due' to seller and the notion that the unliquidated counterclaim remains to be resolved." *Id.*

This court rejects the *Quaker Alloy* analysis in finding an inconsistency and in rejecting *Purofied.* U.C.C. § 2–717, known as ORS 72.7170 in Oregon, clearly and unambiguously states the buyer may deduct damages the buyer has suffered as a result of *any* breach from any amounts the buyer still owes the seller.

Further, *Quaker Alloy* found an inconsistency by taking a sentence of *Purofied* out of context.

Th[e] interpretation of ... [§ 2–717], as well as other courts' interpretations ... convince me that plaintiff's [seller's] summary judgment motion should be denied. Whether plaintiff [seller] breached, and therefore, whether defendant [buyer] has a right to set-off ... is a factual question which cannot be decided at this point in the litigation. Clearly, if defendant [buyer] properly employed [the] set-off [remedy], then defendant [buyer] cannot be said to have breached the contract, and plaintiff cannot recover the purchase price allegedly due. Acceptance of seller's product, and refusal to pay, alone do not necessarily constitute breach.

*Purofied,* 87 F.R.D. at 690.

Lastly, the court in *Quaker Alloy* in part based its decision upon the belated buyer's notice of intention to set-off. According to the court, the buyer notified the seller "belatedly in the form of a reactive counterclaim after suit was filed." *Quaker Alloy,* 686 F.Supp. at 1344. Condux notified PW Resin prior to the filing of PW Resin's suit of Condux's intention to set-off its dam-

ages from the amount Condux allegedly owed PW Resin.

PW Resin attempts to distinguish Condux's authorities. In *RPJ Sportswear, Inc. v. Xylo Tex, Ltd.*, 681 F.Supp. 225 (S.D.N.Y.1988), the court denied the seller's motion for summary judgment. RPJ brought the action against Xylo Tex because Xylo Tex allegedly "provided other manufacturers with the same goods and patterns it supplied to RPJ, in breach of an alleged agreement that certain goods and patterns were to be provided exclusively to RPJ." *RPJ* at 226. Xylo Tex counterclaimed for the unpaid invoices of goods delivered and accepted by RPJ. Xylo Tex moved for summary judgment in the amount of the unpaid invoices.

The court denied the motion for summary judgment, citing U.C.C. 2–717 and *Purofied, supra,* among other cases.

... RPJ advised Xylo Tex in April 1984 that it would not pay the outstanding amount of the purchase price for the goods it had bought from Xylo Tex because it had learned of an alleged breach of the exclusivity contract. That alleged breach is the subject of RPJ's complaint. When a counterclaim is "inextricably interwoven" with the underlying cause of action summary judgment cannot be granted.

*RPJ* at 228. "Because RPJ has a pending action for damages for the alleged breach of the underlying contract of sale, and Xylo Tex's right to recover on its counterclaim depends upon a determination at trial as to whether Xylo Tex breached that contract, Xylo Tex is not entitled to summary judgment." *RPJ* at 229; *see also American Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 460 (S.D.N.Y.1976).

PW Resin states that

[i]n both *Xylo Tex* and *American Electric Power,* unlike in this case, the seller's performance under the contract for which it was seeking the unpaid purchase price was defective and unacceptable to the buyer. For example, breach of the exclusivity agreement in

*Xylo Tex* had significantly reduced the value of the goods to the buyer.

Reply Brief in Support of PW Resin's Motion, p. 11. While this may be true, the courts did not premise their holdings upon the reduced value of the goods. Further, according to Condux, PW Resin's performance was defective and unacceptable.

The *Xylo Tex* and *American Electric Power* courts merely discussed the set-off provision, U.C.C. § 2–717, as a bar to summary judgment when factual issues remain to be resolved regarding the breach of the underlying contract. *See American Elec. Power Co.*, 418 F.Supp. at 460 ("It is axiomatic that a seller cannot recover what is due him under a contract until his performance under the contract has been demonstrated, and it is clear that plaintiffs have raised factual questions regarding adequate performance of the contract which will have to be resolved at trial. Furthermore, § 2–717 of the Uniform Commercial Code permits the buyer the right to set-off its damages against that portion of the purchase price still owing under the contract. Since the issues of contract performance and damages must await trial, the issue of set-off cannot be resolved at this time.") (footnote omitted).

PW Resin has offered nothing to distinguish *Xylo Tex, American Electric Power,* and *Purofied* from the cases it cites, except the fact that different courts issued the rulings. The court is more persuaded by the reasoning contained within *Xylo Tex, American Electric Power,* and *Purofied.* Because factual issues remain to be decided at trial, the court denies PW Resin's motion for summary judgment.

CONCLUSION

PW Resin's motion for summary judgment (# 21) is DENIED.